TOWN v MICHIGAN BELL TELEPHONE COMPANY

McCONNELL v ROLLINS BURDICK HUNTER OF MICHIGAN, INCORPORATED

Docket Nos. 102845, 103476. Argued January 15, 1997 (Calendar Nos. 10-11). Decided July 31, 1997. Rehearing denied in *Town*, 456 Mich 1202.

Veronica Town brought an action in the Wayne Circuit Court against Michigan Bell Telephone Company, alleging constructive discharge and age and sex discrimination. The plaintiff had declined to accept a transfer when her position was consolidated, and, instead, resigned and accepted early retirement. The court, James E. Mies, J., directed a verdict for the defendant. The Court of Appeals, MICHAEL J. KELLY and W. J. CAPRATHE, JJ. (WHITE, P.J., dissenting), in an unpublished opinion per curiam, affirmed, concluding that although the plaintiff had been constructively discharged, she had not proven that age was a determining factor (Docket No. 144980). The plaintiff appeals.

Ted McConnell brought an action in the Wayne Circuit Court against Rollins Burdick Hunter of Michigan, Incorporated, and Miller, Mason & Dickenson, Inc., alleging breach of employment contract, promissory estoppel, and age discrimination after being discharged from his employment. The court, William J. Giovan, J., granted summary disposition for the defendant. The Court of Appeals, MARILYN KELLY, P.J., and SHEPHERD and L. P. BORRELLO, JJ., affirmed in an unpublished opinion per curiam (Docket No. 146449). On rehearing, the Court, MARILYN KELLY, P.J., and L. P. BORRELLO, J. (SHEPHERD, J., not participating), affirmed in an unpublished opinion per curiam, but remanded the case for trial of the plaintiff's age-discrimination claim (Docket No. 146449). The defendants appeal.

In an opinion by Justice BRICKLEY, joined by Justices BOYLE and WEAVER, and an opinion by Justice RILEY, the Supreme Court *held*:

The plaintiffs failed to present sufficient evidence that discrimination was a determining factor in their employers' decisions to terminate their employment.

1. A claim of age discrimination may be shown by the use of direct or indirect evidence. Alternatively, in evaluating age-and sex-discrimination claims, courts have used the prima facie test articu-

lated in *McDonnell Douglas Corp v Green*, 411 US 792 (1973), requiring a showing that the employee was a member of a protected class, was subject to an adverse employment action, and was qualified for the position, and that others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct. The purpose of the prima facie test is to remove the most common nondiscriminatory reasons for the employer's action, such as poor employee performance, and to force the employer to articulate a nondiscriminatory reason for the discharge. Once the employer produces evidence of a nondiscriminatory reason for the discharge, even if that reason later turns out to be incredible, the presumption of discrimination evaporates.

2. After the employer has met its burden of production, the employee must proceed without the benefit of the earlier presumptions. However, elimination of the presumption does not imply that the trier of fact no longer may consider evidence previously introduced to establish a prima facie case. To prevail, the employee must submit admissible evidence that the employer's nondiscriminatory reason was not the true reason for the discharge and that the plaintiff's age was a motivating factor in the employer's decision, i.e., the employee must prove that the employer's explanation was a pretext for discrimination. The proofs offered in support of the prima facie case may be sufficient to create a triable issue of fact that the employer's stated reason is a pretext, as long as the evidence would enable a reasonable factfinder to infer that the employer's decision had a discriminatory basis. When viewed in the light most favorable to the plaintiff, the evidence must create a material issue of fact on which reasonable minds could conclude that the employer's stated reason is a pretext for discrimination for summary judgment to be precluded. That there may be a triable question of falsity does not necessarily mean that there is a triable question of discrimination.

3. In *McConnell*, the plaintiff did not submit evidence of pretext sufficient to enable a reasonable factfinder to infer that the employer's decision had a discriminatory basis. In *Town*, the plaintiff failed to introduce sufficient evidence for a reasonable jury to conclude that age or sex discrimination was a determining factor in Michigan Bell's decision to transfer her.

*Town*, affirmed.

*McConnell*, reversed.

Justice BRICKLEY, joined by Justices BOYLE and WEAVER, would further hold that under *McDonnell Douglas* an employee who was performing a job at a level that met the employer's legitimate expectations is qualified for the job. In *McConnell*, rather than evaluating

the plaintiff's case at the prima facie stage, it may be presumed that the plaintiff established a prima facie case. The purpose of the prima facie case is to force the defendant to provide a nondiscriminatory explanation for the adverse employment action. That purpose was served. However, under the circumstances, the plaintiff did not submit evidence of pretext sufficient to enable a reasonable factfinder to infer that the employer's decision had a discriminatory basis. In *Town*, the defendant presented sufficient evidence to sustain its burden of production and dissolve the plaintiff's prima facie case. The comparison was not between an unqualified employee and a qualified employee, but instead between two qualified employees. The plaintiff's proofs, at most, merely raise questions about the defendant's business judgment. The plaintiff did not create an issue of fact regarding whether the defendant's nondiscriminatory explanation for the plaintiff's transfer was a pretext, much less a pretext for discrimination. Further, the plaintiff never overcame the defendant's allegation that she had taken too long to develop her staff and had not spent adequate time visiting customers at their places of business.

Justice RILEY, concurring, would further hold that employers should be given wide discretion in setting job standards and requirements and in deciding whether employees meet those standards. The job standards and requirements, however, are to be reasonable and consistently applied. Qualification obviously depends on the nature of business at any given time. To ignore the shifting nature of qualification from time to time would make the qualification requirement meaningless and would encourage the harassment of small businesses having informal personnel practices, with unfounded suits. Therefore, when evaluating its employees, employers are to evaluate them on the basis of their merits, in conjunction with the nature of their businesses at the time of the evaluation, and not on the basis of any discriminatory criterion. In *McConnell*, reviewing the plaintiff's proofs and drawing any reasonable inferences in his favor, it may be concluded that he presented evidence establishing a question of fact regarding whether he was minimally qualified. He established a prima facie case of age discrimination. However, there is no evidence that the employer's proffered explanation is unworthy of credence. The record amply demonstrates that the plaintiff had a full and fair opportunity to prove age discrimination.

Justice CAVANAGH, joined by Chief Justice MALLETT, and by Justice KELLY in *Town* only, concurring in part and dissenting in part, stated that in *McConnell*, the defendant's reason for firing the plaintiff was that he was not performing well, not that he was unquali-

fied. The same-actor inference should not be used by the defendant as a shield from liability, but as mere evidence in support of the defendant's claim. Inference of nonbias is an evidentiary matter for the finder of fact, and should not provide a basis for decision as a matter of law. In *Town*, the plaintiff presented sufficient evidence to permit reasonable minds to conclude that a motivating factor in involuntarily transferring her was age, as evidenced by the jury verdict in her favor. It was up to the jury to decide whether the defendant discriminated against plaintiff. The majority has improperly assumed the role of the jury by concluding that the defendant, as a matter of law, did not discriminate against plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Donald J. Gasiorek* and *Patrick Burkett*), for plaintiff Town.

*Pitt, Dowty & McGehee, P.C.* (by *Michael L. Pitt*), for plaintiffs McConnell.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Thomas G. Kienbaum, Robert W. Powell,* and *Jennifer A. Zinn*) for the defendant-appellee in *Town*.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Elizabeth Hardy* and *Julia Turner Baumhart*) for the defendants-appellants in *McConnell*.

Amicus Curiae:

*Clark, Hill, P.L.C.* (by *Duane L. Tarnacki* and *J. Walker Henry*), for Michigan Manufacturers Association.

BRICKLEY, J. The issue presented in these consolidated cases is whether the plaintiffs, McConnell and Town, have presented sufficient evidence of age or sex discrimination to surmount a motion for summary disposition and a motion for a directed verdict, respectively. We conclude in both cases that the plain-

tiffs failed to present sufficient evidence that discrimination had been a determining factor in their employers' decisions.

I

*McCONNELL v ROLLINS BURDICK HUNTER*

In July of 1988, Ted McConnell accepted a job as a sales representative with Rollins Burdick Hunter (RBH). RBH sold health insurance and provided insurance-related consulting services. At the time that he was hired, McConnell was fifty-five years old.

In January of 1989, the plaintiff was informed that he needed to improve his sales production. The plaintiff's next review was in September of 1989. Because the plaintiff's sales revenue had not significantly improved by that time, he was informed that if his revenue did not increase that "there will have to be some adjustment made." The plaintiff was unable to improve his production.

RBH discharged McConnell in January of 1990. At that time, the plaintiff was fifty-seven years old. The plaintiff brought suit against defendants RBH and Miller, Mason, and Dickenson, Inc.,[1] alleging breach of employment contract, promissory estoppel, and age discrimination. The trial court granted summary disposition for the defendants on each of the plaintiff's claims.

---

[1] The plaintiff worked for Miller, Mason, and Dickenson (MMD) immediately before joining RBH. Both firms were subsidiaries of another corporation. The relationship between these two firms and the circumstances of the plaintiff's move (it was disputed whether he transferred to RBH or was hired) from one firm to the other is not relevant to our disposition of this case.

On appeal, the Court of Appeals initially affirmed the decision of the trial court. The plaintiff then moved for a rehearing on the age discrimination claim which was granted. On rehearing, the Court affirmed, but remanded the case for trial of the plaintiff's age discrimination claim in an unpublished opinion per curiam. The defendants appealed that decision in this Court. We granted leave and consolidated this case with *Town v Michigan Bell.*

### TOWN v MICHIGAN BELL TELEPHONE COMPANY

In 1980, Veronica Town sought a departmental transfer from her position of product-line manager with the Michigan Bell Telephone Company. She was interviewed by the assessment center and was offered a position. She turned it down, however, when she learned of the assessment center's schedule, which consisted of a four-day work week, with twelve-hour shifts. This schedule was unacceptable to her because she needed to be home in the evenings to care for her husband, who was suffering from severe health problems.

Instead, the plaintiff accepted a position as manager of market administrators. After one year, the plaintiff's supervisor notified her that she was being transferred to the assessment center because her position was being consolidated with that of another manager. The person who held the other position was leaving the company. A thirty-five-year-old male, James Aveck, assumed the consolidated position.

Still under the impression that the assessment center's schedule was incompatible with her husband's needs, the plaintiff resigned and accepted early

retirement. The plaintiff was forty-nine years old at the time she resigned.

The plaintiff filed suit against Michigan Bell in 1983, alleging constructive discharge and age and sex discrimination. After removal to federal court, reinstatement in state circuit court, summary disposition motions, and mediation, the case was tried by a jury in April, 1991. At the close of the plaintiff's proofs, the defendant moved for a directed verdict, which was taken under advisement by the trial court. After the jury returned a verdict for the plaintiff, defendant renewed its motion for directed verdict, which the trial court granted.

The Court of Appeals affirmed the trial court's directed verdict. Although it concluded that the plaintiff had been constructively discharged, it agreed with the trial court that the plaintiff had not proven that age was a determining factor in the defendant's decision. One judge dissented, arguing that the plaintiff had presented adequate evidence of discrimination by discrediting the defendant's explanation of its decision. Citing *St Mary's Honor Center v Hicks*,[2] the dissenting judge argued that, once the employer's explanation was discredited, the jury could, but was not required to, find that the real explanation for the employer's decision was discriminatory.

We granted leave to appeal and consolidated this case with *McConnell v Rollins Burdick Hunter.*

II

A claim of age discrimination may be shown under ordinary principles of proof by the use of direct or

---

[2] 509 US 502, 525; 113 S Ct 2742; 125 L Ed 2d 407 (1993).

indirect evidence.[3] Alternatively, many courts, including this one,[4] have used the prima facie test articulated by the United States Supreme Court in *McDonnell Douglas Corp v Green*[5] as a framework for evaluating age-discrimination claims. Originally applied to cases of race discrimination, the test has been modified to accommodate cases of age and sex discrimination.[6]

The modified *McDonnell Douglas* prima facie approach requires an employee to show that the employee was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct.

The purpose of the prima facie test is to 1) remove the most common nondiscriminatory reasons for the employer's action,[7] such as poor employee performance, and 2) to force the employer to articulate a nondiscriminatory reason for the discharge.[8] Once the employer produces evidence of a nondiscriminatory reason for the discharge, even if that reason later turns out to be incredible, the presumption of discrimination evaporates.[9]

After the employer has met its burden of production, the employee must proceed without the benefit of the earlier presumptions. However, elimination of

---

[3] *Matras v Amoco Oil Co*, 424 Mich 675, 683; 385 NW2d 586 (1986).

[4] *Id.*

[5] 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

[6] *Matras*, n 3 *supra.*

[7] *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 253; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

[8] *Hicks, supra* at 510-511.

[9] *Burdine*, n 7 *supra* at 255.

the presumption does "not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case."[10] As the United States Supreme Court explained:

> A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with the effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.[11]

Therefore, "the evidence and inferences that properly can be drawn from the evidence presented during the plaintiff's prima facie case may be considered in determining whether the defendant's explanation is pretextual."[12]

Once the presumption drops out of the case, the plaintiff retains the ultimate burden of proving discrimination. Plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the discrimination was defendant's true motive in making the adverse employment decision.[13]

---

[10] *Id.*

[11] *Id.,* n 10.

[12] 1 Lindemann & Grossman, Employment Discrimination Law (3d ed), p 23.

[13] *Id.; McDonnell Douglas, supra* at 804; *Combs v Plantation Patterns,* 106 F3d 1519, 1528 (CA 11, 1997).

To prevail, the employee must submit admissible evidence to prove that the employer's nondiscriminatory reason was not the true reason for the discharge and that the plaintiff's age was a motivating factor in the employer's decision.[14] Thus, the employee must prove that the employer's explanation was a pretext for discrimination. The proofs offered in support of the prima facie case may be sufficient to create a triable issue of fact that the employer's stated reason is a pretext, as long as the evidence would enable a reasonable factfinder to infer that the employer's decision had a discriminatory basis.[15] "The strength of the prima facie case and the significance of the disbelieved pretext will vary from case to case depending on the circumstances. In short, everything depends on the individual facts."[16]

Ultimately, the plaintiff will have the burden of producing evidence, whether direct or circumstantial, that proves that discrimination was a determining factor in the employer's decision. Although the majority decision in *Hicks* appeared to be unambiguous, "many readers have found it to be otherwise."[17]

> The effect of *Hicks* on employer-brought summary judgment motions has been a matter of particular debate. Some employers have argued that, in order to defeat an employer's motion for summary judgment, *Hicks* requires plaintiffs to offer substantial evidence *both* that the employer's articulated reason was false *and* that the employer's true reason was discriminatory—*i.e.*, a "pretext-plus" standard. Some plaintiffs, on the other hand, have

---

[14] *Hicks, supra* at 507-508.

[15] *Udo v Tomes*, 54 F3d 9, 13 (CA 1, 1995).

[16] *Woods v Friction Materials, Inc*, 30 F3d 255, 260, n 3 (CA 1, 1994).

[17] Lindemann, n 12 *supra* at 24.

argued that once a prima facie case of discrimination is put
forward, summary judgment for the employer *never* is
appropriate, even if no evidence is put forward to refute the
employer's articulated nondiscriminatory reason, because
the factfinder's disbelief alone should be enough to permit a
finding of pretext.[18]

We decline to adopt either extreme, and, instead,
favor an intermediate position, which is the predomi-
nant view among the federal circuits. We would hold
that when viewed in the light most favorable to the
plaintiff, the evidence must create a material issue of
fact on which reasonable minds could conclude that
the employer's stated reason is a pretext for discrimi-
nation for summary judgment to be precluded. Thus,
plaintiff will not *always* present a triable issue of fact
merely by rebutting the employer's stated reason(s);
"put differently, that there may be a triable question
of *falsity* does not necessarily mean that there is a
triable question of discrimination."[19] Furthermore, we
note that in accordance with nine other federal cir-
cuits, "evidence sufficient to discredit a defendant's
proffered nondiscriminatory reasons for its actions,
taken together with the plaintiff's prima facie case,
[may be] sufficient to support (but not require) a find-
ing of discrimination."[20] "Where . . . either direct or
circumstantial evidence from which a fact-finder
could rationally conclude that the employer's stated
reason is a pretext for discrimination, summary judg-
ment normally should be denied."[21]

---

[18] *Id.* at 25  (emphasis in original).

[19] *Id.* at 26  (emphasis in original).

[20] *Combs*, n 13 *supra* at 1535.

[21] Lindemann, n 12 *supra* at 26-27.

III

In light of these principles, we turn to McConnell's case. Defendants RBH and MMD argue that the plaintiff was not qualified to perform his job, and is therefore unable to satisfy the qualification element of the prima facie case. An employee is qualified if he was performing his job at a level that met the employer's legitimate expectations.[22] By all accounts, the plaintiff's performance was less than stellar. Indeed, the plaintiff failed to generate enough revenue to pay his own salary. In his first full year, 1989, the plaintiff generated $70,505.11 in revenue while drawing a salary of $84,351.25 during the same period. He was terminated at the end of that year.

Rather than evaluate plaintiff's case at the prima facie stage, however, in this case we elect to presume that plaintiff has established a prima facie case. The purpose of the prima facie case is to force the defendant to provide a nondiscriminatory explanation for the adverse employment action. That purpose having been served, we move to the plaintiff's evidence that the defendant's proffered nondiscriminatory reason is a pretext for discrimination.

We conclude that plaintiff's evidence of pretext would have been insufficient to overcome the defendant's motion for summary judgment. First, the plaintiff argues that his alleged replacement, Lucinda Lawrence, was held to a different standard of performance than he was. To create an inference of disparate treatment, McConnell must prove that he and Law-

---

[22] *Bouwman v Chrysler Corp*, 114 Mich App 670, 679; 319 NW2d 621 (1982); *Menard v First Security Services Corp*, 848 F2d 281, 285 (CA 1, 1988) ("To establish that he was 'qualified' a complainant must show 'that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative' "); *McDonald v Union Camp Corp*, 898 F2d 1155, 1160 (CA 6, 1990) ("at a level which met his employer's legitimate expectations").

rence were similarly situated, i.e., "all of the relevant aspects" of his employment situation were "nearly identical" to those of Lawrence's employment situation.[23] One relevant aspect of the two employees, their salaries, was far from identical. McConnell was paid a base salary of $67,481, while Lawrence's base salary was $24,000. Additionally, McConnell received benefits that Lawrence did not, such as a private club membership and a leased car. Further, McConnell had over twenty-five years of experience, while Lawrence had much less comparable experience. The most significant distinction between the two employees, however, is that McConnell failed to generate enough sales to cover his own salary, while Lawrence generated sales equivalent to nearly 2.3 times her salary in her first year. Thus, Lawrence was not similarly situated to McConnell because her performance was proportionately higher. A more apt comparison would have been for McConnell to compare himself to another employee who failed to generate enough sales to cover his salary, but who was retained. Accordingly, we conclude that the two employees were not "nearly identical" on a "relevant aspect" of their respective jobs, namely, performance.

Second, we also acknowledge the fact that the plaintiff was employed with the defendant for a relatively brief time.

> [I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.[24]

---

[23] *Pierce v Commonwealth Life Ins Co*, 40 F3d 796, 802 (CA 6, 1994).
[24] *Proud v Stone*, 945 F2d 796, 797 (CA 4, 1991).

The plaintiff has argued that the "same actor" inference should not apply because he was transferred, not hired, as the result of a merger between MMD and RBH. The characterization of plaintiff's job change is not determining, however, because the same person who discharged the plaintiff, Sandy McMillan, had sole authority to bring plaintiff into his organization. Thus, the "same actor" inference applies because McMillan both approved plaintiff's "transfer" from MMD and discharged plaintiff within a period of eighteen months. Because the possibility that the manager at RBH would "develop[] an aversion to older people" within an eighteen-month period is remote, at best, we conclude that the plaintiff's brief tenure with RBH creates an inference that RBH's decision did not have a discriminatory basis.[25] Taking the above inference in combination with the paucity of McConnell's other evidence, we conclude that he did not submit evidence of pretext sufficient to enable a reasonable factfinder to infer that the employer's decision had a discriminatory basis.

Accordingly, we would reverse the decision of the Court of Appeals and reinstate the trial court's grant of summary disposition in this case.

IV

The plaintiff in *Town v Michigan Bell* alleges both age and sex discrimination in violation of the Michigan Civil Rights Act.[26]

---

[25] *Lowe v J B Hunt Transport, Inc*, 963 F2d 173, 175 (CA 8, 1992).

[26] "An employer shall not . . . discharge . . . an individual . . . because of . . . age [or] sex . . . ." MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).

The defendant, Michigan Bell, contends that the plaintiff was transferred because of an overall reduction in its workforce. The plaintiff's supervisor, Tom Rodgers, testified that he was advised that he had to reduce the number of managers in the department. This fact was not disputed by the plaintiff. Further, Rodgers offered a plausible explanation for transferring the plaintiff. According to the defendant, Aveck's marketing skills were superior to those of the plaintiff. Additionally, the defendant claimed that the plaintiff had taken too long to develop her staff and had not spent adequate time visiting customers at their places of business. Because the defendant's burden of production is met by the introduction of evidence that would "support a finding that unlawful discrimination was not the cause of the employment action," we conclude that the defendant presented sufficient evidence to sustain its burden of production and dissolve the plaintiff's prima facie case.[27]

In *Matras*, we held that if an employee is discharged because of a reduction in the employer's workforce, the employee must also present "sufficient evidence on the ultimate question," namely, whether the employee's age or sex was a determining factor in the employer's decision to discharge that employee.[28]

A layoff in the context of an overall workforce reduction provides a nondiscriminatory explanation for the plaintiff's discharge. This puts the plaintiff's case in the same posture as it would be after the employer articulates *any* legitimate nondiscriminatory explanation in response to the plaintiff's prima

---

[27] *Hicks, supra* at 507. For purposes of analysis only, we presume that the plaintiff has established a prima facie case of discrimination.

[28] *Matras,* n 3 *supra* at 684.

facie case. Once the employer offers such an explana-
tion, the presumption of the prima facie case—that
the employee's discharge was discriminatory—evapo-
rates and is no longer relevant.[29] The plaintiff can no
longer rely on the inference of discrimination in the
prima facie case, and the evidence must be evaluated
in light of the rational inferences it will support.

The question is whether the plaintiff presented suf-
ficient evidence, taken in a favorable light, to find
that age discrimination was a determining factor in
the decision to discharge the plaintiff.[30] In reviewing a
trial court's grant of a directed verdict, we examine
the testimony and all legitimate inferences that may
be drawn from it in the light most favorable to the
plaintiff.[31]

The plaintiff's trial strategy was to show that her
qualifications were superior to those of Aveck's. The
plaintiff's former job was as a marketing manager.
Although the plaintiff had some marketing experi-
ence, her primary experience had been as a manager.
Aveck's experience, on the other hand, had been pri-
marily in marketing and was more extensive than the
plaintiff's. Predictably, much of the trial testimony
concerned whether management or marketing skills
were more important to the position.

We agree with the Court of Appeals conclusion that
Aveck was qualified for the position. In her testimony,
the plaintiff conceded that Aveck was "probably quali-
fied" for the position, and Aveck testified that he had

---

[29] *Hicks, supra* at 510.

[30] *Matras*, n 3 *supra* at 682-683. For purposes of analysis only, we
assume that the plaintiff's transfer constituted a constructive discharge.

[31] *Mulholland v DEC Int'l Corp*, 432 Mich 395, 415; 443 NW2d 340
(1989).

trained, in his capacity as an instructor, all the personnel that he would be supervising. Further, marketing experience was relevant to the position. Thus, the plaintiff's argument that she was more qualified than Aveck focused on the soundness of Michigan Bell's selection of one competent employee over another, as opposed to the veracity of its explanation.

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.[32]

The comparison was not between an unqualified employee and a qualified employee, but instead between two qualified employees. The plaintiff's proofs, at most, merely raise questions about Michigan Bell's business judgment. Accordingly, the plaintiff did not create an issue of fact regarding whether the defendant's nondiscriminatory explanation for the plaintiff's transfer was a pretext, much less a pretext for discrimination.[33] Further, the plaintiff never overcame Michigan Bell's allegation that she had taken too long to develop her staff and had not spent adequate time visiting customers at their places of business. Under these circumstances, this Court will not second-guess an employer's decision.

The dissenting Court of Appeals judge argued that the trial court improperly entered a directed verdict for the defendants. The dissenter argued that "the jury's apparent disbelief of Rodgers' testimony,

---

[32] *Fuentes v Perskie*, 32 F3d 759, 765 (CA 3, 1994).

[33] *Dubey v Stroh Brewery Co*, 185 Mich App 561, 566; 462 NW2d 758 (1990).

together with the other evidence in the case, was suf-
ficient to permit the jury to infer the requisite inten-
tional discrimination."[34] Other than the presumptions
of the plaintiff's prima facie case, we find no evidence
in the record to support an inference of discrimina-
tory animus. Relying on *Hicks, supra*, the dissenter
argued that a jury may draw an inference of discrimi-
nation solely from its disbelief of the employer's rea-
son for the discharge. We agree, however, that this
merely acknowledges that evidence of falsity may cre-
ate an inference of discrimination. The *Hicks* Court
was unequivocal about not replacing the plaintiff's
burden of proving discrimination with the lesser bur-
den of proving falsity, as the following passages
demonstrate.

> But nothing in law would permit us to substitute for the
> required finding that the employer's action was the product
> of unlawful discrimination, the much different (and much
> lesser) finding that the employer's explanation of its action
> was not believable.[35]

> [The plaintiff must show] *both* that the reason was false,
> and that discrimination was the real reason. [Emphasis in
> original.][36]

> It is not enough . . . to disbelieve the employer; the
> factfinder must believe the plaintiff's explanation of inten-
> tional discrimination.[37]

> Even though (as we say here) rejection of the defendant's
> proffered reasons is enough at law to sustain a finding of

---

[34] Unpublished opinion per curiam, issued February 16, 1995 (Docket
No. 144980), slip op at 2.

[35] *Id.* at 514-515.

[36] *Id.* at 515.

[37] *Id.* at 519.

discrimination, *there must be a finding of discrimination.*
[Emphasis in original.][38]

"[N]one of this means that trial courts or reviewing
courts should treat discrimination differently from other
ultimate questions of fact."[39]

Taken as a whole, *Hicks* indicates that, under some
circumstances, a plaintiff may create an inference of
discrimination through the introduction of evidence
showing that the employer's proffered reason is false.
Yet, a plaintiff will not always present a triable issue
of fact merely by rebutting the employer's stated rea-
sons. "[T]hat there may be a triable question of falsity
does not necessarily mean that there is a triable ques-
tion of discrimination."[40] This point is demonstrated
by the final disposition of the *Hicks* case. On remand,
the district court concluded that the defendant's prof-
fered reason for discharging Hicks—alleged rule vio-
lations—was a pretext.[41] The court was not per-
suaded that the defendant's actions were based on a
discriminatory animus, however, and it entered a
judgment for the defendant, which was affirmed by
the United States Court of Appeals for the Eighth
Circuit.[42]

We conclude that the plaintiff in the present case
failed to introduce sufficient evidence for a reasona-
ble jury to conclude that age or sex discrimination
was a determining factor in Michigan Bell's decision
to transfer her. Because we would hold that the plain-
tiff did not present sufficient evidence of discrimina-

[38] *Id.* at 511, n 4.
[39] *Id.* at 524.
[40] 1 Lindemann, n 12 *supra* at 26.
[41] 1995 WL 879968 (ED Mo).
[42] 90 F3d 285 (CA 8, 1996).

tion, the issue whether the plaintiff's transfer constituted a constructive discharge is moot. The judgment of the Court of Appeals should be affirmed.

In conclusion, we would reverse the decision of the Court of Appeals in *McConnell v Rollins Burdick Hunter*, and reinstate the trial court's grant of summary disposition. We would affirm the decision of the Court of Appeals in *Town v Michigan Bell*, upholding the trial court's grant of a directed verdict.

BOYLE and WEAVER, JJ., concurred with BRICKLEY, J.

RILEY, J. (*concurring*). I write separately because I have reservations regarding the lead opinion's articulation of the "qualification" element under the *McDonnell Douglas*[1] approach.[2] I also believe the lead opinion fails to properly analyze plaintiff McConnell's claim because it merely "presume[s] that plaintiff has established a prima facie case." BRICKLEY, J., *ante*, p 699.[3] Notwithstanding, I agree, after examining the

---

[1] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

[2] I agree with the lead opinion that plaintiff Town failed to establish that defendant's adverse employment action was a pretext to age and sex discrimination. Merely because Town believed that she was more qualified than James Aveck is not enough to carry her burden of persuasion under the *McDonnell Douglas* approach. The Civil Rights Act "protects, [not the qualified worker, but] as a practical matter, the imperfect older worker from being treated worse than the imperfect younger one." See *Shager v Upjohn Co*, 913 F2d 398, 403 (CA 7, 1990). In Town's case, both she and Aveck were qualified. Hence, it became purely a business decision when defendant decided to transfer her, and this Court should be reluctant to second-guess management.

[3] The lead opinion also errs in concluding that "plaintiff's brief tenure with [Rollins Burdick Hunter] creates an inference that RBH's decision did not have a discriminatory basis." *Ante*, p 701. It reaches its conclusion by claiming McConnell was both hired and discharged by the same manager within a period of eighteen months. *Id.* I disagree. First, plaintiff was not hired by the same "actor" that discharged him. RBH assumed all liability of Miller, Mason, and Dickenson, Inc.'s debts. Hence, plaintiff, along with

evidence in a light most favorable to him, that McConnell failed to establish that age was a determining factor in defendant's adverse employment action.

I

Under the *McDonnell Douglas* approach, "concerns about [a plaintiff's] performance are more appropriately raised as part of the second and third steps of the . . . scheme." *Clark v Coats & Clark, Inc*, 990 F2d 1217, 1227 (CA 11, 1993),  citing, inter alia, *Rosenfield v Wellington Leisure Products, Inc*, 827 F2d 1493, 1495, n 2 (CA 11, 1987);  *Siegel v Alpha Wire Corp*, 894 F2d 50, 54 (CA 3, 1990); *Bienkowski v American Airlines, Inc*, 851 F2d 1503, 1505-1506 (CA 5, 1988).[4] Thus, to satisfy the qualification prong of the prima facie case, under the first stage of the

two other employees, was transferred from MMD to RBH. They were not considered new hirees; no new employment application was completed and plaintiff's personnel folder disclosed that plaintiff's date of hire with RBH was April 1, 1986, the date he commenced his employment with MMD. Second, assuming plaintiff was hired and discharged by the same actor, "this is simply evidence like any other and should not be accorded any presumptive value." *Waldron v SL Industries, Inc*, 56 F3d 491, 496, n 6 (CA 3, 1995).  See also *Vaughan v Must, Inc*, 542 NW2d 533, 539 (Iowa, 1996).

[4] In *Clark, supra* at 1227, n 3, the court observed:

Whether an employee possesses the qualifications for a position thus is generally distinct from the issue whether he performed the job satisfactorily. But this decision should not be read to hold that evidence of performance is never relevant at the prima facie stage. We have permitted plaintiffs alleging unlawful discharge to establish that they were qualified by introducing evidence that they had performed the job without complaint. *If the employee relies on satisfactory job performance to establish his qualifications, evidence of poor job performance may also be relevant at the prima facie stage.* [Citations omitted; emphasis added.]

In the instant case, plaintiff does not rely on "satisfactory job performance" to establish his qualifications.

*McDonnell Douglas* approach, a plaintiff may simply testify that the "general quality of his work was satisfactory." *MacDonald v Eastern Wyoming Mental Health Center*, 941 F2d 1115, 1120 (CA 10, 1991), citing *Yarbrough v Tower Oldsmobile, Inc*, 789 F2d 508, 512 (CA 7, 1986).

Even though the first stage of the approach was not intended to be overly burdensome for an employee to satisfy,[5] " '[e]mployers [should be] given wide discretion in setting job standards and requirements and in deciding whether [employees] meet those standards.' " *York v American Telephone & Telegraph Co*, 95 F3d 948, 954 (CA 10, 1996), quoting *Hickman v Flood & Peterson Ins, Inc*, 766 F2d 422, 425 (CA 10, 1985). The job standards and requirements, however, are to be reasonable and consistently applied. *Id.* As noted by the United States Court of Appeals for the Seventh Circuit in *Kephart v Institute of Gas Technology*, 630 F2d 1217, 1219 (CA 7, 1980):

> Qualification obviously depends on the nature of . . . business at any given time. . . . To ignore the shifting nature of qualification from time to time would make the qualification requirement meaningless and would encourage the harassment of small businesses having informal personnel practices, with unfounded suits.[6]

---

[5] *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 253; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

[6] The *Kephart* court went further by incorporating by reference the district judge's opinion and order, which stated:

> The Age Discrimination in Employment Act, however, was not intended as a vehicle for judicial review of business decisions. See *Havelick v Julius Wile Sons & Co*, 445 F Supp 919, 926 (SD NY, 1978). The question before the court is not whether the company's methods were sound, or whether its dismissal of Kephart was an error of business judgment. The question is whether he was discriminated against because of his age. *Although an employer may*

Therefore, when evaluating its employees, employers are to evaluate them on the basis of their merits, in conjunction with the nature of their businesses at the time of the evaluation, and not on the basis of any discriminatory criterion. See *Hazen Paper Co v Biggins*, 507 US 604, 611; 113 S Ct 1701; 123 L Ed 2d 338 (1993), quoting *Western Air Lines, Inc v Criswell*, 472 US 400, 422; 105 S Ct 2743; 86 L Ed 2d 321 (1985).

II

In the instant case, reviewing plaintiff's proofs and drawing any reasonable inferences in his favor, I conclude that he presented evidence establishing a question of fact regarding whether he was minimally qualified. He stated that he thought his job performance was better than those situated similarly to him.[7] He also noted that, not only did other producers have to

---

not make unreasonable expectations, and must make the employee aware of just what [its] expectations are, beyond that the court will not inquire into the defendant's method of conducting its business. [*Id.* at 1223 (emphasis added).]

Nonetheless, "the qualifications offered by the employer [must be] reasonable [as well as] consistently applied." *York, supra* at 954.

[7] At plaintiff's deposition the following exchange occurred between plaintiff and defense counsel:

[*Defense Counsel*]: So, in January 1989 you thought you were performing at least satisfactorily and better than satisfactorily?

[*Plaintiff*]: I was out working. I was bringing in some customers. Yes, the dollar figures weren't up there, but *I had more money coming in than some guys that had been there* that had business like Tom O'Meara, but he wasn't bringing any new groups. There wasn't anybody bringing new groups in and so forth. That I believe I was the one that was bringing in some business. The dollar volume wasn't quite that high and even with the service fees that I had coming in from the old businesses that I had it's my opinion that *I had enough money coming in or more money than most of the people that were in there.* [Emphasis added.]

increase their production but, except for Thomas O'Meara, he may have been producing the most.[8]

As to whether he was replaced, Bonnie Morton testified that Lucinda Lawrence assumed a majority of plaintiff's accounts. Defendant contends that Lutz assumed most of the responsibility for plaintiff's accounts; however, whether Lawrence replaced plaintiff must be left to the province of the trier of fact because it involves findings of fact and weighing credibility.[9]

Because plaintiff was fifty-six years old at the time of his discharge and others similarly situated and outside the protected class were not affected by defendant's adverse employment action, as well as the dispute surrounding whether Lawrence replaced plaintiff, I conclude that he established a prima facie case of age discrimination.

In rebutting the presumption of discrimination, defendant asserted that plaintiff was discharged for poor performance. Plaintiff argues that defendant's proffered explanation is merely a pretext for age discrimination. He asserts that defendant committed age discrimination by discharging him and replacing him with the younger Lucinda Lawrence. Plaintiff contends that Sandy McMillan, his supervisor, informed

---

[8] John Lutz, a producer in employee benefits who had twenty-one years experience in the actuarial area with Blue Cross/Blue Shield, testified that he did not receive a raise in September 1989 because his performance, as well as that of other producers, was down. In particular, he stated that "at a producers meeting [it was announced] that the office results were not good. Therefore, nobody gets a raise . . . ."

[9] In support of its contention that plaintiff was not replaced, defendant cites *Barnes v GenCorp Inc*, 896 F2d 1457, 1465 (CA 6, 1990). In *Barnes*, however, the United States Court of Appeals for the Sixth Circuit was addressing when an employee is replaced under a reduction in work force situation.

him "that he was expected to generate revenue equal to 3 times his salary and benefit package." He also contends that "Lawrence was not held to this same standard." However, there is no support in the record for plaintiff's claim that he was expected to generate revenue of two to three times his salary. Plaintiff's claim amounts to an unsubstantiated self-serving allegation.[10] Plaintiff places great weight on defendant's hiring of Lawrence. However, Lawrence was merely his replacement, not someone who was similarly situated.[11] It appears, on the basis of the evidence he presented, that Lutz was plaintiff's best comparison.[12] Lutz testified that he at least "covered [his] salary and

---

[10] In concluding that "[t]here is a question of fact on whether [McConnell] was held to a different performance standard than the other employees," the Court of Appeals noted that "deposition testimony establishe[d] that other employees, particularly the younger [Lawrence], were not held to comparable production standards." Unpublished opinion per curiam of the Court of Appeals, issued March 22, 1995 (Docket No. 146449), p 2. However, the Court of Appeals mistakenly references plaintiff's own deposition. To establish a genuine issue of material fact that he was not held to "comparable" standards, plaintiff may not merely rely on unsubstantiated allegations, but, rather, must come forward with admissible evidence, affidavits, or other evidentiary materials, demonstrating the existence of a factual dispute. See MCR 2.116(G)(4). See also *Durant v Stahlin*, 375 Mich 628, 638-639; 135 NW2d 392 (1965).

[11] "[A]llowing a cause of action any time a worker can show replacement by a younger person ignores the realities of the workplace noted in *Laugesen [v Anaconda Co*, 510 F2d 307 (CA 6, 1975)], i.e., that older workers will, more often than not, be replaced by younger persons." *Matras v Amoco Oil Co*, 424 Mich 675, 708; 385 NW2d 586 (1986) (Riley, J., dissenting).

In this respect, the lead opinion is correct. No anomaly exists in defendant's hiring of Lawrence. As noted by the lead opinion:

McConnell was paid a base salary of $67,481, while Lawrence's base salary was $24,000. Additionally, McConnell received benefits that Lawrence did not, such as a private club membership and a leased car. [*Ante*, p 700.]

[12] Lutz is probably most similarly situated to McConnell. However, others may include O'Meara and Kathy Kristopik.

fringes." Yet, as the lead opinion observes, "plaintiff generated $70,505.11 in revenue while drawing a salary of $84,351.25 . . . ." *Ante,* p 699. Not only does the record indicate that Lutz generated more than plaintiff, but O'Meara generated more as well.

The record also evidences that defendant was reasonable in its treatment of plaintiff. In January 1989, McMillan informed plaintiff that he needed to increase his production. The following September, plaintiff testified that he met with McMillan and Thomas O'Meara, plaintiff's direct supervisor, for a performance evaluation. In that meeting, they informed him that his employment was in jeopardy, barring cognizable improvement in production by year-end.[13] Plaintiff did not increase his production and, on January 22, 1990, McMillan discharged him for poor performance.[14]

---

[13] In his deposition, plaintiff explained what McMillan and O'Meara told him:

> [*Defense Counsel*]: What exactly do you claim Sandy [McMillan] told you, Sandy and Tom [O'Meara] told you in this meeting of September of '89 about your performance?
>
> [*Plaintiff*]: About the performance that the dollars were down.
>
> [*Defense Counsel*]: Your dollars were down?
>
> [*Plaintiff*]: Everybody's dollars were down, but mine were down.
>
> [*Defense Counsel*]: And that your dollars had to improve?
>
> [*Plaintiff*]: *Well, they said that production has got to improve, we got to get more money, more money into the house or there will have to be some adjustment made.* [Emphasis added.]

[14] It is uncontested that plaintiff's annual production was less than his base pay and lagged far behind his total compensation package. Hence, because plaintiff was on notice that he had to increase his production, I conclude that defendant justifiably considered his salary and total benefits in relation to his productivity as grounds for his discharge.

In *Anderson v Baxter Healthcare Corp,* 13 F3d 1120, 1125-1126 (CA 7, 1994), quoting in part *Metz v Transit Mix, Inc,* 828 F2d 1202, 1212 (CA 7, 1987) (Easterbrook, J., dissenting), the court noted that the Supreme

CONCLUSION

I conclude that there is no evidence "that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 256; 101 S Ct 1089; 67 L Ed 2d 207 (1981), citing *McDonnell Douglas, supra* at 804-805. The record now before us amply demonstrates that plaintiff had a full and fair opportunity to prove age discrimination—evidence of which I find lacking.

CAVANAGH, J. (*concurring in part and dissenting in part*). I concur with the majority that plaintiff McConnell established a prima facie case of discrimination, but failed to present sufficient evidence so that defendant's actions were a result of illegal discrimination. However, I respectfully dissent from the lead opinion that would hold that plaintiff Town failed to present sufficient evidence so that reasonable minds could conclude age was a determining factor in plaintiff's constructive discharge.

As to plaintiff McConnell, I agree with Justice RILEY that plaintiff presented sufficient evidence to satisfy a

---

Court's decision in "*Hazen Paper Co* vindicates the dissent in *Metz* which contended that '[w]age discrimination is age discrimination only when wage depends directly on age, so that the use for one is a pretext for the other; high covariance is not sufficient . . . .'" In *Metz, supra* at 1212-1213, Judge Easterbrook stated:

> [E]mployers always should be entitled to consider the relation between a particular employee's wage and his productivity. . . . Many people under 40 (the lower bound of the protected group) earn $26,000 or more; if such a salary exposes them to discharge on economic grounds, then it should expose older employees to discharge. *You do not get immunity from an otherwise lawful employment decision by growing old.* As my colleagues say, the "ADEA is aimed at protecting the individual employee" but what it protects each employee against is age discrimination. [Emphasis added.]

prima facie case of age discrimination. As she noted, concerns about a plaintiff's performance are more appropriately considered at the second and third stages of the *McDonnell Douglas*[1] burden-shifting test. This is especially true where, as here, plaintiff has alleged that other employees were also performing as poorly as he. Therefore, defendant's reason for firing plaintiff was because he was not *performing* well, not that he was *unqualified.*

I disagree with Justice BRICKLEY's conclusion that, because plaintiff's manager hired and fired plaintiff within a relatively short period of time, no reasonable jury could find that discrimination was the cause of the termination. Initially, as plaintiff indicates, he was not hired by the same manager that fired him because McMillan was not the person who decided to hire plaintiff. The record establishes that in 1988, plaintiff was told that MMD of Michigan (plaintiff's former employer) would be merging with defendant. Mr. McMillan characterized this activity as a "merger." Furthermore, plaintiff was not required to fill out an employment application or go through any of the typical new hire process. Therefore, taken in the light most favorable to plaintiff, Justice BRICKLEY's assertion that the same actor hired and fired plaintiff is factually incorrect.

In addition to the factual inaccuracies, I would decline to adopt a rigid test for determining whether plaintiff was discriminated against. Justice BRICKLEY's approach can be characterized as the "same actor inference." Even assuming that Mr. McMillan was the

---

[1] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

same person who hired and fired plaintiff, the inference should not be used by the defendant as a shield from liability; rather, the inference should be used as mere evidence in *support* of defendant's claim.

In *Waldron v SL Industries, Inc*, 56 F3d 491, 496, n 6 (CA 3, 1995), the United States Court of Appeals for the Third Circuit rejected the same actor inference, stating:

> [W]e agree with the position advanced by the Equal Employment Opportunity Commission as amicus curiae: "where . . . the hirer and firer are the same and the discharge occurred soon after the plaintiff was hired, the defendant may of course argue to the factfinder that it should not find discrimination. But this is simply evidence like any other and should not be accorded any presumptive value." . . . Additionally, as the EEOC further notes, it was plausible under the evidence presented at summary judgment that [the defendant] would hire [the plaintiff], use his skills for a few years while a younger person was being "groomed" for his position, then fire [the plaintiff] because of his age.

Likewise, the Iowa Supreme Court has also rejected the "same actor inference" in *Vaughan v Must, Inc*, 542 NW2d 533, 539 (Iowa, 1996). It stated,

> To apply such a wooden rule in an area where each case is factually distinct would effectively grant every employer a grace period at the beginning of each employee's tenure . . . with no fear of sanctions.

Therefore, I believe that the inference of nonbias is an evidentiary matter for the finder of fact to consider, and should not be a something upon which the court should decide a case as a matter of law.

However, I concur with Justice RILEY that plaintiff failed to present sufficient evidence upon which rea-

sonable minds could conclude that age was a determining factor in defendant's decision to fire him. Plaintiff contends that he was expected to generate revenue equal to three times his salary and benefit package, and that others were not held to the same standard. However, even if others were not making "three times" their salary and benefits, it is undisputed that plaintiff was not even generating revenue equal to "one time" his salary and benefits. Furthermore, while it is true that plaintiff presented evidence that production was down across the board, he did not present any figures demonstrating that other employees who were generating less revenue than "one time" their salary were retained by the employer. In short, plaintiff failed to show that persons who were performing as poorly as he was were treated differently. Therefore, I concur with the majority that plaintiff McConnell failed to show that reasonable minds could conclude that plaintiff was being discriminated against on the basis of age.

As to plaintiff Town, the majority would hold that because both plaintiff and Aveck were qualified for their positions, it was purely a business decision for defendant to retain Aveck. I disagree. While it is true that courts should not second-guess the sound business decisions of an employer, an employer's actions are not entirely beyond review. Where, as here, the plaintiff has alleged that the decision was not a sound business decision, but rather the product of illegal discrimination, we must review the proofs in the light most favorable to plaintiff to determine whether reasonable minds could conclude that age was a determining factor in its decision to transfer plaintiff. We cannot simply accept defendant's assertion that the

decision was a business decision without having viewed the record in the light most favorable to the plaintiff.

The majority concludes that, because both employees were qualified, the decision of the employer should stand. However, the majority ignores the proofs plaintiff presented at trial, which, taken in the light most favorable to her, would indicate that she was *more* qualified than Aveck. As noted by the Court of Appeals dissenting judge,

> Part of [plaintiff's] strategy was to show that the testimony of Tom Rodgers, plaintiff's supervisor, regarding Aveck's and plaintiff's qualifications was unworthy of belief. A reasonable trier of fact could have concluded, after evaluating Rodgers' testimony, that Rodgers was unfamiliar with Aveck's skills, that plaintiff's skills and qualifications were superior to Aveck's, that Rodgers' stated reasons for choosing Aveck were a pretext, *and that plaintiff's age and sex were determining factors in Rodgers' decision.* [Unpublished opinion, issued February 16, 1995 (Docket No. 144980) (WHITE, J., dissenting), slip op, p 1 (emphasis added).]

Furthermore, I agree with the dissenting judge that a plaintiff must do more than simply disprove a proffered reason. *Id.* Here, plaintiff did not rely solely on the fact that she lost her job to a younger, male employee. Rather, she also presented evidence that she was *more* qualified than Aveck. Furthermore, she presented evidence that the defendant violated *its own policy* on involuntary transfers when it transferred her rather than Aveck who had substantially less seniority than plaintiff. Finally, plaintiff presented evidence that the reason she was involuntarily transferred in violation of the company's internal policy

was because it knew that she could not accept the new position because she could not work the evening hours the job required, and that she previously refused the same position, thus creating a likelihood that the older employee would retire. Plaintiff presented sufficient evidence so that reasonable minds could conclude that a motivating factor in involuntarily transferring plaintiff was her age. Indeed, reasonable minds did conclude that age was a determining factor, as evidenced by the jury's verdict in plaintiff's favor.

Unlike the majority, I would hold that it was up to the jury to decide whether defendant discriminated against plaintiff. The majority has improperly assumed the role of the jury by concluding that defendant, as a matter of law, did not discriminate against plaintiff. Obviously, reasonable minds can and have disagreed with the majority. Therefore, I respectfully dissent.

MALLETT, C.J., concurred with CAVANAGH, J.

KELLY, J., concurred with CAVANAGH, J., only in *Town.*