# STATE OF MICHIGAN

# COURT OF APPEALS

LAWRENCE FRANKLIN,

Plaintiff-Appellant,

UNPUBLISHED
January 26, 2016

v

DEPARTMENT OF MANAGEMENT AND
BUDGET,

Defendant-Appellee.

No. 324110
Ingham Circuit Court
LC No. 13-000591-CD

Before: RONAYNE KRAUSE, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Plaintiff Lawrence Franklin is an employee of defendant the Department of Management and Budget (DTMB), in the position of "Departmental Analyst 11." Prior to 2009, when defendant underwent reorganization, plaintiff occupied the position of "Facilities Manager 13." That reorganization resulted in the elimination of a number of supervisory positions, and, *inter alia*, the change in plaintiff's position. Plaintiff pursued an administrative complaint of unlawful discrimination based on race and age, and the Civil Service Commission ultimately found no such discrimination to be apparent. Plaintiff contends that he thereafter "became effectively un-promotable" and subject to retaliation and further racial discrimination; he commenced the instant action on that basis. Defendant asserts that it articulated legitimate, nondiscriminatory reasons why plaintiff was not hired for any of the positions for which he applied, and plaintiff failed to substantiate his assertions with any actual evidence. The trial court, after a hearing, granted summary disposition in favor of defendant. Plaintiff now appeals, and we affirm.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. The non-moving party may not survive a motion for summary disposition by merely promising to establish an issue of fact at trial or because it is merely possible that a claim might be supported by evidence at trial. *Id*. at 121.

As an initial matter, plaintiff contends that the trial court applied an incorrect standard in evaluating defendant's motion for summary disposition and his response to that motion. Because our review is de novo, it simply does not matter whether the trial court did or did not properly evaluate the motion.

For purposes of the instant summary disposition motion, plaintiff's claims of racial discrimination and of retaliation operate functionally identically. Both claims are based on the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. Specifically, MCL 37.2202(1)(a) and (b) prohibit employment discrimination, which includes failing to hire a person, on the basis of, *inter alia*, race of an employee or applicant. MCL 37.2701(a) forbids a conspiracy to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." As plaintiff points out, there is no dispute that he is a member of a racial minority group, and there is no dispute that he made a complaint of discrimination on that basis. Notwithstanding defendant's rather disingenuous denials of knowledge in its answer, there is no real dispute that plaintiff applied for, and was not hired for, numerous employment positions.

To establish a prima facie case of discrimination, an employee must "show that the employee was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v Michigan Bell Telephone Co*, 455 Mich 688, 695; 568 NW2d 64 (1997) (BRICKLEY, J.). A prima facie case of retaliation may not be established merely by mistreatment, but rather upon a showing "(1) that [plaintiff] engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Garg v Macomb Co Comm Mental Health Services*, 472 Mich 263, 272-273; 696 NW2d 646 (2005). Under both claims, if the plaintiff successfully establishes a prima facie case, the defendant must articulate and provide some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Town*, 455 Mich at 698; *Roulston v Tendercare (Michigan), Inc*, 239 Mich App 270, 280-281; 608 NW2d 525 (2000) (analogizing retaliation under the Whistleblower Protection Act to claims under the ELCRA). If the defendant successfully does so, the plaintiff is not entitled to any presumption in their favor, although whatever evidence the plaintiff has presented is still to be considered. *Town*, 455 Mich at 695-696.

For purposes of our review, we will afford plaintiff the benefit of the doubt as to whether he has established a prima facie case of either racial discrimination or retaliation. We presume, without actually deciding, that they are established, although we note that in the record provided to us on appeal, *no* evidence was submitted by plaintiff despite making some references in his pleadings to supposedly attached exhibits or other documents, none of which we can find. It appears that plaintiff's claim of disparate impact is supported only by reference to a 2009 reorganization that he expressly admits is not at issue in this matter and that, as defendant notes,

statistically contradicts plaintiff.[1]  Plaintiff's claims of retaliation are likewise premised on references to exhibits that do not exist.  Plaintiff contends that a David Stevens wrote a letter complaining that the interview and selection processes were biased, but the only *evidence* is that Stevens testified that he indeed believed that the process was unfair but that no racial discrimination was occurring.  Nevertheless, we will afford plaintiff the benefit of the doubt.

In each of the eight hiring decisions for which defendant provided "Candidate Recommendation Justification" memoranda, the hiring panels provided extensive explanations of why they believed the hired applicants excelled at a variety of topics, including "adaptability," "building a successful team," "coaching," "communication," "customer focus," "delegating responsibility," "facilitating change," "gaining commitment," "innovation," "managing conflict," "planning and organizing," "strategic decision making," "technical/professional knowledge," and "work standards."[2]  Critically, plaintiff's complaints about all hires, including the two unaddressed by defendant, *uniformly* focus on whether the hired applicants had greater or lesser educational attainment and specific work experience.  Plaintiff contends that less-qualified applicants were hired over him, but in fact it is simply obvious that plaintiff's only argument is a disagreement with the selection criteria defendant uses for hiring decisions.  This is a complaint about the wisdom, shrewdness, prudence, or competence of a hiring decision, and thus an impermissible, or at least irrelevant and unhelpful, complaint that defendant hired the wrong people.  See *Town*, 455 Mich at 704.  To the extent plaintiff argues that the hiring decisions were the product of a "'good-old-boy' network at its worst," even if that were true, that is not necessarily evidence of either racial discrimination or retaliation, but rather nepotism and personality-politics:  again, essentially just bad policy.

Put even more simply, plaintiff has only established that the lowest common denominator in defendant's hiring decisions is *him*, not his race or any connection to the complaints he filed.  Plaintiff's discrimination claim turns on the assertions that in addition to temporal proximity, which he admits is insufficient, less-qualified applicants were hired and many of the interviewers were aware of his complaint and that they could lose their jobs if his complaint was successful.  Regarding the former, even without specifically addressing the two specific hiring decisions for which defendant has not submitted a justification memorandum, it is a clear pattern that the applicants who were hired were *not* less qualified than plaintiff; indeed, it appears that they were significantly *more* qualified under the selection criteria defendant employed.  Regarding the latter, plaintiff again simply provides no evidence, and even if we were to take plaintiff's statements at face value, it is unclear how that knowledge would translate to an adverse hiring decision.  Indeed, a person who could lose their job if an applicant prevailed in a racial

---

[1] According to plaintiff, prior to the 2009 reorganization, the "Facility Supervision group" consisted of "11 Caucasian males, 2 African American males, 1 Hispanic male, and 3 Caucasian females," and afterwards consisted of 7 Caucasian males and 1 African-American male.  Although as defendant points out, plaintiff cites no evidentiary source for these figures, we note that the final ratio differs little from the initial ratio.

[2] None of the candidates' memoranda included every one of those topics, but all included some combination of most of them.

discrimination complaint might be more likely to *hire* that person in order to make the complaint seem less credible.

Defendant's proffered legitimate, nondiscriminatory reasons clearly show that defendant simply cares about different things when making hiring decisions than plaintiff believes it should. Plaintiff may or may not be correct in asserting that defendant's hiring decisions were ill-advised, but unwise decisions do not amount to retaliation or discrimination. Defendant has more than adequately justified its hiring decisions, and plaintiff has not provided any indication that those reasons were pretextual or insufficient. Consequently, the trial court correctly found that no genuine question of material fact exists.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien