**RaShell KING, Plaintiff,**

**v.**

**HEALTHRIDER, INC., a Delaware corporation, ICON Health & Fitness, Inc., a Delaware corporation, Defendants.**

**Civil Action No. 97–40168.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 10, 1998.

Connie S. McNealy, Troy, MI, for Plaintiff.

James R. Kohl, Plunkett & Cooney, Bloomfield Hills, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

The instant action involves a claim of gender discrimination asserted by plaintiff, Ra-Shell King, a former employee of defendant, HealthRider, Inc. (hereinafter "HealthRider"), and defendant ICON Health & Fitness, Inc. (hereinafter "ICON"), the parent corporation of HealthRider. For the reasons set forth below, this court will grant defendants' motion for summary judgment.[1]

### FACTS

In August 1994, plaintiff was hired by HealthRider as a store manager at West Oaks Mall near Houston, Texas. Her husband's employer subsequently transferred him to Michigan, and plaintiff told her supervisor, Paul Jarman, that she wanted to stay with HealthRider if it were possible to get a position in Michigan. Per Paul Jarman's suggestion, she contacted Bruce Remund, then the Michigan Regional Manager, who said that while there were no store manager positions available, he would hire her as an assistant regional manager. Plaintiff accepted the position as an upward career move, although she accepted a decrease in pay.

Plaintiff was assistant regional manager to Remund from July 1995 until September 1995, when Remund was transferred to a regional manager position in Chicago. At that point, Peter Jarman was the Northern Area Manager. Peter Jarman posted the Michigan Regional Manager position internally, and conducted interviews with three women, including plaintiff, for the position. One of the questions Jarman asked plaintiff at her interview, was whether there were any conflicts that would prevent her from fulfilling her responsibilities as a regional manager. When plaintiff asked whether Jarman was referring to her husband and children, he replied "yes." Plaintiff responded that her family was supportive of her career.

1. Plaintiff's complaint contains claims for both gender discrimination and intentional infliction of emotional distress. At oral argument on the instant motion, plaintiff conceded that she had abandoned the claim for intentional infliction of emotional distress contained in Count II. Accordingly, this court will dismiss Count II of plaintiff's complaint. Therefore, the instant opinion addresses only plaintiff's claim of gender discrimination.

Plaintiff was promoted to Michigan regional manager and was in that position when HealthRider was acquired by ICON in August of 1996. HealthRider became a subsidiary of ICON, maintaining accounts, expenses, and employees separately from ICON. While ICON earned profits and increased its workforce during the period relevant to this dispute, HealthRider in fact lost money and was forced to reduce its staff. Following the acquisition, Jarman was told to consolidate the Michigan and Cleveland regions and to reduce his staff by one regional manager.

On or about August 21, 1996, Jarman claims that he telephoned plaintiff and left a message for her to call him in regards to the consolidation. He then called Jeffery Benson, regional manager of the Cleveland Region, and asked if Benson was interested in the position of regional manager of the combined regions. Benson responded that he was interested, and asked what would happen to plaintiff. Jarman claims that he replied that he would see if she was interested in the position or if she would take a position as a store manager. Meanwhile, plaintiff was attempting to contact Jarman, but after paging him three times, she finally telephoned Benson, and asked him what was happening. Apparently Benson mistakenly assumed by plaintiff's tone that she had accepted the store manager position, thereby making him the regional manager. When plaintiff finally was able to contact Jarman, he explained that there must have been a misunderstanding and that he would have to conduct interviews.

The next day, Jarman called plaintiff and conducted a telephone interview, and then telephoned Benson for an interview. He then telephoned both candidates on a conference call and conducted a joint interview. Following these interviews, Jarman selected Benson as the regional manager for the consolidated region. Jarman claims that he

based his determination upon profitability statistics, the interviews, and opinions that he solicited from others in the company who had worked with each of the candidates. He also consulted with his assistant, Emilee Duckworth. When Jarman contacted plaintiff, he offered her a store manager position, which would have resulted in a significant decrease in pay and work responsibility. Plaintiff asserts that Jarman asked her to stay on as regional manager until the consolidation was instituted, but would not give her a specific date despite her repeated requests.

In November 1996 the manager of the Ohio Region resigned, and Jarman claims to have offered that position to plaintiff. Plaintiff claims that she was not offered that position, and in fact, that it went to an unqualified male. Plaintiff refused the store manager position and left the employment of the defendants on November 19, 1996.

### ANALYSIS

■ Count I of plaintiff's complaint contains a claim of gender discrimination brought pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCLA § 37.2202(1)(a).[2] In *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 695, 568 N.W.2d 64 (1997), the Michigan Supreme Court adopted the three-part analytical framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for cases involving facially discriminatory employer actions.[3] First, plaintiff must establish a prima facie case of discrimination, which defendant can then rebut by showing a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 802, 93 S.Ct. 1817. Once the employer has articulated such a reason, the burden shifts back to the employee to show that the employer's proffered reason was "in fact, a

---

**2.** The Elliott Larsen Civil Rights Act, MCLA § 37.2202, *et seq.* provides, in pertinent part: "(1) An employer shall not do any of the following: (a) Fail or refuse to hire, recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status."

**3.** In *Town,* the court modified the *McDonnell Douglas* test, which applied originally to racial discrimination, to accommodate cases of age and sex discrimination. *Town,* 455 Mich. at 695, 568 N.W.2d 64.

coverup for a ... discriminatory decision." *Id.* at 805, 93 S.Ct. 1817.

■ Plaintiff must first establish a prima facie case of gender discrimination, by showing that: (1) plaintiff is a member of a protected class, (2) plaintiff suffered an adverse employment action, (3) plaintiff was qualified for the position, and (4) plaintiff was discharged under circumstances that give rise to an inference of unlawful discrimination. *Id.* 579 N.W.2d at 914.[4]

■ In this case, plaintiff is a member of a protected group as a woman. *See Farmington Educ. Assoc. v. Farmington School Dist.*, 133 Mich.App. 566, 572, 351 N.W.2d 242 (1984). In addition, she suffered an adverse employment action when she was passed over for the promotion to regional manager of the recently consolidated regions. Plaintiff was also qualified for the position, having already been a regional manager for nearly a year. Moreover, Jeffrey Benson was chosen as the consolidated regional manager over plaintiff under circumstances that give rise to an inference that Benson was chosen because he is male, and that plaintiff was passed over because she is female. Therefore, plaintiff has established a prima facie case that she was discriminated against because of her gender.

■ After plaintiff has produced evidence of a prima facie case of gender discrimination, a presumption of discrimination arises. *Lytle* at 914. The burden then shifts to the defendant to overcome the presumption by articulating a "legitimate, nondiscriminatory reason for plaintiff's termination." *Id.* In the instant case, defendant HealthRider experienced losses up to $16 million between January and August 1996, and was subsequently acquired by ICON in August 1996. Defendants assert that those financial losses neces-

sitated a reduction in staff. Following the acquisition, Jarman was told to consolidate the Michigan and Cleveland regions and to eliminate his staff by one regional manager. A reduction in work force due to economic necessity is a well recognized, nondiscriminatory explanation for the adverse treatment of employees. *See Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 702, 568 N.W.2d 64 (1997); *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 895 (6th Cir.1997).[5]

■ When defendant has rebutted the presumption of gender discrimination, the "presumption drops away and the burden of proof shifts back to plaintiff." *Lytle*, 579 N.W.2d at 915. Because plaintiff has lost the presumption of a prima facie inference of discrimination, plaintiff must now show by a preponderance of the evidence that "there is a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination." *Id.*

■ Plaintiff in this case relies on the fact that ICON, HealthRider's parent corporation, was experiencing growth in both sales and number of employees during the period when plaintiff's position was consolidated. Plaintiff asserts that the consolidation and elimination were inconsistent with ICON's economic growth, and therefore, that the consolidation was a pretext to eliminate plaintiff, who was then the only remaining female manager at that level in the company. However, it appears to the court that the consolidation was economically motivated in light of the significant financial losses sustained by HealthRider. Although ICON was successful during the period in dispute, HealthRider maintained accounts, expenses, and employees separately from ICON. Therefore ICON's success during that period is not

---

**4.** The Supreme Court of Michigan in *Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906, No.102515, 1998 WL 352930 (Mich. July 1, 1998), recently modified the fourth element, which was set out previously in *Town*. The *Town* court characterized the fourth element as requiring proof that "others similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Id.* at 695, 568 N.W.2d 64.

**5.** Defendant asserts that when workforce reductions affect members of protected classes, the *McDonnell Douglas* approach should be abandoned. This court finds defendant's argument misplaced. The *McDonnell Douglas* analysis is necessary in order to eliminate the most common nondiscriminatory reasons for the employer's action, and to force the employer to articulate a nondiscriminatory reason for the discharge. *Town*, 455 Mich. at 695, 568 N.W.2d 64.

attributable to HealthRider, a separate entity. This court is satisfied that the consolidation was not a pretext for the adverse employment treatment of plaintiff. However, this does not end the inquiry.

■ While work force reduction is a valid economic reason for eliminating employees, it is not acceptable to use such a situation as an opportunity to discriminate against employees who are in protected classes. *See Featherly v. Teledyne Indus., Inc.*, 194 Mich.App. 352, 363, 486 N.W.2d 361 (1992) (noting that while the economic necessity in that case was not disputed, "[t]he primary issue ... is whether, in choosing which employees to lay off, the defendants made their selection by using age as a determining factor," and that "where an employer has a legitimate reason to terminate, it may not do so for illegal reasons such as unlawful discrimination"); *See also Matras v. Amoco Oil Co.*, 424 Mich. 675, 682, 385 N.W.2d 586 (1986) (holding that "[a] jury can find that the discharge was because of [gender] if [gender] was not the sole factor").

The key issue in this case is whether plaintiff is able to prove that gender was a motivating factor in defendants' decision to promote Benson over plaintiff. To overcome the instant motion for summary judgment, plaintiff must present "sufficient evidence to permit a reasonable juror to find that for the same or similar conduct she was treated differently from a similarly situated male employee." *Lytle* at 918.

Plaintiff asserts that gender was a motivating factor in the decision to promote Benson instead of plaintiff. Plaintiff claims that at her interview for regional manager, Jarman asked whether there was anything that would prevent her from fulfilling her employment obligations, and when asked if he was referring to her family, Jarman replied "yes." Plaintiff also has provided the affidavit of Amanda Gallo, a former employee of HealthRider, who asserted that at a meeting to plan the regional conference, Jarman advised the group that plaintiff could not travel any great distance or for any long period of time because she had a family. However, none of the comments made by Jarman regarding plaintiff's family affected plaintiff adversely in that she was promoted to regional manager and attended regional conventions. This court does not find a causal link between those comments and the decision to promote Benson over plaintiff.

Plaintiff further relies on the fact that she was not offered the Ohio regional manager position that became available in November 1996. Plaintiff asserts that defendants' failure to assign her that position clearly establishes that defendants were not downsizing, but instead eliminating plaintiff because she is a woman. However, "[when] an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company." *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986). Despite having no duty to offer plaintiff any alternative employment, Jarman offered plaintiff a store manager position, which plaintiff ultimately rejected. Jarman eventually hired the Ohio region's assistant regional manager to that position. This court is satisfied that an assistant with experience in dealing with that particular region is a logical choice to promote to manager, but this court is reluctant to analyze defendants' business decision further. The same can be said in regards to plaintiff's argument that her qualifications were superior to those of Benson. In this case, although plaintiff and Benson had slightly different qualifications, they both had experience as regional managers for HealthRider. This court finds that plaintiff and Benson were similarly qualified to assume the responsibilities of a regional manager. However, this court is reluctant to determine which candidate was more qualified, for to do so would be to determine whether the employer's decision was wrong or mistaken when the "factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Town*, 455 Mich. at 704, 568 N.W.2d 64. None of the evidence offered by plaintiff is sufficient to establish that gender was a motivating factor in defendant's decision to promote Benson instead of plaintiff.

For the reasons set forth above and viewing the evidence in a light most favorable to the plaintiff, this court finds that plaintiff has

not brought forth sufficient evidence to raise a genuine issue of material fact regarding whether defendants' promotion of Benson was motivated by a discriminatory animus. Therefore, defendants' motion for summary judgment is granted as to the claim of gender discrimination contained in Count I of plaintiff's complaint.

## ORDER

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED** as to Count I of plaintiff's complaint, and Count I is **DISMISSED with prejudice.**

It is further **ORDERED** that Count II of plaintiff's complaint is **DISMISSED without prejudice,** pursuant to plaintiff's voluntary withdrawal of the claims contained in Count II on the record at oral argument.

**SO ORDERED.**