# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 1, 2009

138114 & (19)(20)

JANICE M. POWERS,
      Plaintiff-Appellee,

v

POST-NEWSWEEK STATIONS, MICHIGAN,
INC., d/b/a WDIV-TV, ALAN FRANK,
STEVEN WASSERMAN, and THEODORE
PEARSE,
      Defendants-Appellants.

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 138114
COA: 288582
Wayne CC: 07-705775-CD

_____/

On order of the Court, the motion for immediate consideration is GRANTED. The application for leave to appeal the December 11, 2008 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court. The motion for stay is DENIED.

KELLY, C.J. (*concurring*).

Plaintiff, an African-American woman, worked for defendant WDIV-TV as an advertising account executive. She was eventually promoted to the position of sales manager. When she was not made general sales manager (GSM), she filed suit alleging that she had been discriminated against on the basis of her race and gender.

The previous GSM, Matt Kell, held the position until he succumbed to cancer. While he was ill, plaintiff applied for and received short-term disability leave for depression. Plaintiff claimed that defendants discriminated against her by terminating her employment after denying her an extension of her medical leave of absence. Finally, she alleged that defendants' conduct constituted intentional infliction of emotional distress.

Defendants moved for summary disposition on the ground that plaintiff had failed to create a genuine issue of material fact concerning racial discrimination or intentional infliction of emotional distress. The trial court denied the motions. On interlocutory appeal, the Court of Appeals reversed the trial court's ruling on the intentional infliction of emotional distress claim, but denied leave to appeal with respect to her discrimination claims. Defendants now seek leave to file an interlocutory appeal in this Court.

Under the Michigan Civil Rights Act (CRA),[1] a claim of racial or gender discrimination in employment may be made with direct or indirect evidence.[2] Where the

---

[1] MCL 37.2201 *et seq*.

employee adduces direct evidence of bias, a plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case.[3] Where direct evidence is unavailable, to avoid summary disposition, the employee must present evidence from which the fact-finder could infer that the plaintiff was the victim of unlawful discrimination.[4]   Thus, to establish a prima facie case of discrimination, a plaintiff must present evidence that she was

> (1) a member of a protected class; (2) subject to an adverse employment action; (3) qualified for the position; and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's  adverse conduct.[5]

Once the employee establishes a prima facie case, the employer must articulate a nondiscriminatory reason for its actions.  If the employer adduces such a reason, even if that reason later turns out to be incredible, the presumption of discrimination evaporates.[6] Nonetheless, the evidence supporting an employee's prima facie case may also be considered in deciding whether a genuine issue exists about whether the employer's purported nondiscriminatory reasons constitute a pretext.[7]

Here, defendants claim that plaintiff failed to create a genuine issue of material fact that she suffered an adverse employment action in defendants' failure to promote her to GSM.  According to defendants, plaintiff failed to show that the position was open at any time before she became disabled.  But plaintiff asserts that, although she was available for the job, defendant never formally offered it to anyone and took no steps to screen candidates to fill it.  Plaintiff states that she was forced to assume the duties and responsibilities of the position and yet was never given the title or the pay.

Plaintiff gave deposition testimony about Theodore Pearse, the head of her department, showing that he acted in a discriminatory manner.  Plaintiff also testified about disparate treatment by Pearse concerning the hours that she worked and the duties that she performed.  This contrasted with the favorable treatment that Pearse gave to Kell. Plaintiff's testimony establishes a genuine issue of material fact about adverse

---

[2] *Town v Michigan Bell Tele Co*, 455 Mich 688, 694-695 (1997).

[3] "Direct evidence" is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Hazle v Ford Motor Co*, 464 Mich 456, 462 (2001).

[4] *Hazle*, *supra* at 462-463.

[5] *Town*, *supra* at 695.

[6] *Id*.

[7] *Id*. at 696.

employment actions. It also raises an inference that Pearse acted out of racial animus in failing to pay plaintiff for her work as GSM and in refusing to promote her to that position. According to plaintiff's testimony, Pearse could have chosen a GSM when Kell died, but did not. If plaintiff's testimony is believed, a finder of fact could infer racial animus from Pearse's decision not to formally promote plaintiff to the position of GSM.

Defendants also argue that plaintiff failed to provide evidence of an adverse employment action with respect to her medical leave extension. They assert that she did not show that she was disparately treated compared to similarly situated employees. Defendants point out that white employees were also denied leave extensions.

However, plaintiff persuasively argues that the failure to extend her medical leave resulted in the termination of her employment, which could clearly constitute an adverse employment action. Moreover, although plaintiff's employment was terminated in accord with defendants' standard policy, an exception to that policy had been made for Kell. But, no exception to defendants' standard policy exists for terminally ill employees. As a result, a genuine issue of fact exists concerning whether plaintiff was treated differently because of her race.

Finally, defendants contend that plaintiff's retaliation claim fails as a matter of law. They assert that no one involved in the decision not to offer her the GSM position or to deny her a medical leave extension knew of the alleged protected activity. However, plaintiff claimed that Pearse was aware of her complaints of racial discrimination. Thus, if believed, plaintiff's testimony demonstrates resentment toward plaintiff by Pearse that could constitute retaliation.

For these reasons, summary disposition, in favor of defendants, of plaintiff's discrimination claims was inappropriate. The case should proceed to trial. Therefore, I concur in the Court's order denying defendants' application for leave to appeal.

MARKMAN, J. (*dissenting*).

I respectfully dissent. Plaintiff filed suit alleging multiple claims of racial and gender discrimination. The trial court denied defendants' motions for summary disposition, and the Court of Appeals denied leave to appeal on all but one of these motions. *Powers v Post-Newsweek Stations Michigan Inc*, unpublished order of the Court of Appeals, entered December 11, 2008 (Docket No. 288582). Because I believe that all but one of plaintiff's remaining claims should be dismissed, I dissent.

To raise an inference of discrimination, a plaintiff must establish a prima facie case by showing that

(1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. [*Hazle v Ford Motor Co*, 464 Mich 456, 463 (2001).]

Establishing a prima facie case, however, "does not necessarily preclude summary disposition in the defendant's favor." *Id.* at 463-464. Instead, the defendant can "articulate a legitimate, nondiscriminatory reason for its employment decision" that rebuts the inference of discrimination. *Id.* at 464. Once the defendant has articulated such a reason, the plaintiff can only survive summary disposition by demonstrating that the evidence would allow a reasonable trier of fact to conclude that the employer's action was motivated by discriminatory animus and that the employer's proffered reason was "'a pretext for [unlawful] discrimination.'" *Id.* at 465-466 (alteration in original), quoting *Lytle v Malady (On Rehearing)*, 458 Mich 153, 176 (1998).

Plaintiff first claims that defendants discriminated against her by not promoting her to the general sales manager (GSM) position, which was the next level above her local sales manager position. The previous GSM, Matt Kell, held the position until he died from cancer. While Kell was sick, plaintiff applied for and received short-term disability leave for work-induced depression. She was still on short-term leave when Kell died. Defendants did not seek to fill the GSM position until approximately a year after Kell passed away. By that time, defendants had terminated plaintiff's employment because she did not return after her short-term disability leave expired. The GSM position was eventually filled by a black man.

Plaintiff has failed to establish a material issue of fact regarding an adverse employment action, because the GSM position did not open until after she had effectively ended her employment by not returning when her short-term leave expired. Plaintiff has also not established an inference of a discriminatory purpose because defendants hired an individual in the same "protected class" to which she belonged. Additionally, even assuming plaintiff has established a prima facie case, defendants' non-discriminatory reason, that defendants did not want to remove Kell from the position while he battled terminal cancer, clearly overcomes any presumption of discrimination. See *Hazle*, 464 Mich at 473. Plaintiff presented no evidence showing that defendants' reason was a pretext for keeping her out of the position.

Plaintiff next claims discrimination based on defendants' decision to not extend her short-term disability leave. The thrust of her argument is that defendants' denial of an extension was based on race because Kell, a white male, had received short-term disability extensions while he battled cancer. Kell was the only employee who received extensions beyond the period set by defendants' policy (two other white employees also did not receive extensions). I do not believe that this raises an inference of

discrimination, because the differences between plaintiff's and Kell's medical situations were drastic.[8] However, again, even assuming that plaintiff established a prima facie case, she did not rebut defendants' non-discriminatory reason for extending Kell's benefits (that he was battling terminal cancer). Accordingly, I believe the presumption of discrimination "drops away," *Hazle*, 464 Mich at 465, and plaintiff's claim cannot continue because she did not present further evidence showing that defendants' actions were motivated by discriminatory animus.

Plaintiff lastly claims that defendants retaliated against her for complaining to their general manager about the mistreatment of black employees. To establish a prima facie case of retaliation, a plaintiff must show

> "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." [*Garg v Macomb Co Community Mental Health Servi*ces, 472 Mich 263, 273 (2005) (citation omitted).]

For one of plaintiff's claims, there are material facts in dispute regarding these elements. Plaintiff alleged that Kell's supervisor did not discipline Kell for making plaintiff's job more difficult. A "supervisor's decision not to take action to stop harassment" can be considered an "adverse employment action." *Meyer v Center Line*, 242 Mich App 560, 571 (2000). When plaintiff complained to the supervisor regarding Kell's behavior, he told her that Kell was upset that plaintiff had complained to the general manager about racial mistreatment and that she should leave if she did not like Kell's behavior. I believe this arguably establishes a material dispute about whether the supervisor's inactivity was causally connected to plaintiff's earlier complaints to the general manager.

---

[8] I respectfully disagree with Chief Justice Kelly that an inference of discrimination was raised because "no exception to defendants' standard policy exist[ed] for terminally ill employees." *Ante* at 3. I do not believe any formal exception is required to explain an employer's decision to provide an employee with extended disability care while he battled a serious cancer that would eventually cause his death.

However, I do not believe that plaintiff has presented any evidence of a causal connection between her complaints and defendants' decisions not to promote her to the GSM position and not to extend her short-term disability. Plaintiff only shows that the decision-makers for those actions had knowledge of plaintiff's past complaints, which I believe alone is insufficient to establish a causal connection between plaintiff's complaints and the alleged adverse employment actions. See *West v Gen Motors Corp*, 469 Mich 177, 186 (2003) ("Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed.").

Accordingly, I would reverse the trial court's decision and dismiss plaintiff's claims with respect to the GSM promotion and short-term disability leave. Likewise, I would dismiss plaintiff's retaliation claim, except with respect to the portion of that claim arising out of the supervisor's failure to correct Kell's alleged mistreatment of plaintiff.

CORRIGAN, J., joins the statement of MARKMAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 1, 2009

Clerk

0428