# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 5, 2015

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein,
Justices

150068

NATHAN MELSON, a Minor, by
PAMELA MELSON, Next Friend and
Individually, and BRIAN MELSON,
Next Friend and Individually,
         Plaintiffs-Appellees,

v

MARY BOTAS,
         Defendant-Appellant,

and

LAWTON COMMUNITY SCHOOLS and
JOSEPH TRIMBOLI,
         Defendants.
_____/

SC: 150068
COA: 315014
Van Buren CC: 12-620436-CZ

On order of the Court, the application for leave to appeal the June 19, 2014 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J. (*dissenting*).

Michigan is one of only two states whose highest court has not dispositively addressed the establishment, and the contours, of the tort of intentional infliction of emotional distress (IIED). In *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 603 (1985), this Court, in refusing to ratify such a tort, offered the following as partial justification for its decision:

> The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. [Quotation marks and citation omitted.]

Justice LEVIN, in a lengthy separate opinion, outlined his own concerns and concluded that the tort of IIED would "increase the burden of litigation and randomly provide a fortuitous amount of compensation in a handful of isolated cases . . . ." *Id*. at 612 (opinion by LEVIN, J.). On subsequent occasions, this Court has chosen neither to

recognize nor to repudiate the tort. See, e.g., *Patterson v Nichols*, 490 Mich 988 (2012) (vacating *Patterson v Nichols*, 489 Mich 937 (2011)); *Powers v Post-Newsweek Stations*, 483 Mich 986, 987 (2009) (KELLY, C.J., concurring); *Smith v Calvary Christian Church*, 462 Mich 679, 686 n 7 (2000).

In 1966, however, our Court of Appeals approved the tort of IIED. *Frishett v State Farm Mut Auto Ins Co*, 3 Mich App 688, 692-693 (1966). Under that Court's present formulation of the tort, which largely mirrors that of the Restatement Torts, 2d, § 46, a plaintiff may prevail on a claim of IIED if he or she can prove (a) that the defendant engaged in "extreme and outrageous conduct," (b) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress, (c) that the defendant's actions actually caused emotional distress, and (d) that the emotional distress was severe. *Graham v Ford*, 237 Mich App 670, 674 (1999). Responsibility for delineating the tort has rested exclusively with our Court of Appeals since then.

In my view, the instant case underscores the present need for this Court to clearly and precisely address this tort, and if it is to be preserved, as I believe it ought to be, to carefully define its scope and limits through the exercise of our common-law authority.

The student plaintiff, a 12-year-old learning-disabled pupil in defendant Mary Botas's home economics class, was assertedly the victim of IIED when, after stopping work on a classroom project because his fingers hurt, he received an angry response from Botas, who stated, "Why don't you just go kill yourself?" before she ripped the project from his hands and threatened to lock him in a room. The student and his parents, individually and as next friend of their son, sued defendants for IIED. The trial court granted summary disposition in defendants' favor, reasoning that Botas's conduct had not been "extreme and outrageous," but the Court of Appeals reversed and remanded for trial. *Melson v Botas*, unpublished opinion per curiam of the Court of Appeals, issued June 19, 2014 (Docket No. 315014).

The issue here is not the appropriateness or professionalism of Botas's conduct; making such a statement to one's student cannot be defended. However, any disciplinary response to her conduct is a matter between Botas and the school district in which she is employed. The issue in the instant case is whether a responsible legal system should treat her conduct as the basis for a civil lawsuit with the availability of monetary damages and other remedies.

In defining the issue this way, I raise the following questions: Is there anything in Botas's conduct that even remotely suggests that she *intended* either to actually encourage plaintiff to commit suicide or to cause him "severe emotional distress"? Or rather was her outburst an obviously sarcastic and frustrated response, reflecting nothing more than a momentary loss of composure at a student's unwillingness to pursue and

complete an assigned project? Was Botas's response better viewed, not as a *successful* effort to inflict "severe emotional distress," but as a *failed* effort to instill some greater sense of perseverance in her student? Do we wish to foster a legal environment in which momentary and passing displays of temper or anger increasingly afford the bases for civil lawsuits? Furthermore, what is the evidence that the student plaintiff actually suffered any "severe emotional distress" at all? It is one thing to establish that a person has suffered a physical or property injury, or even that a mental illness of some sort has been suffered, but what evidence suffices to establish "emotional distress"? Regarding the culpable act of a defendant that forms the basis for an IIED claim, what type of conduct is sufficiently egregious to be characterized as "extreme and outrageous"? Was Botas's conduct here "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community"? *Atkinson v Farley*, 171 Mich App 784, 789 (1988) (quotation marks and citation omitted). Can words that allegedly gave rise to "emotional distress" in the first place be undone or mitigated by words of apology? Is "recklessness"-- whatever that means in the context of "inflicting" emotional distress-- a sufficient state of mind to warrant the imposition of IIED liability? To what extent are the personal vulnerabilities of an individual plaintiff relevant in assessing either the "extreme[ness] and outrageous[ness]" of the defendant's conduct or the plaintiff's own degree of "emotional distress"?

As one legal scholar has observed concerning IIED litigation:

. . . [A suit for IIED] is much cheaper to bring than a negligence action since there is no need for experts either with respect to causation or extent of injury; [and] the lawsuit is much easier to bring since it does not depend upon the willingness of independent experts, regardless of cost, to verify the existence and extent of suffering by the plaintiff and to assert that it is more probable than not that the defendant's conduct caused plaintiff's injury. In these respects, [IIED] resembles traditional intentional torts. . . .

\* \* \*

[However, IIED] differs from traditional intentional torts in an important respect: it provides no clear definition of the prohibited conduct.

Battery, assault, and false imprisonment describe specific forms of behavior; . . . everyone can agree that you cannot have a battery without physical contact . . . .

[But] the term "outrageous [conduct]" is neither value-free nor exacting. . . . The concept thus fails to provide clear guidance either to those whose conduct it purports to regulate, or to those who must evaluate that conduct. [Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct*, 82 Colum L Rev 42, 51 (1982).]

And perhaps most significantly, at what point does IIED come into tension with the First Amendment's protection of free speech? See, e.g., *Snyder v Phelps*, 562 US 443 (2011). This Court should exercise a particularly cautious judgment in considering the breadth of the IIED tort in a contemporary culture characterized by relatively quick resort to litigation, frictions and incivilities arising from an increasingly urbanized society, and a growing discussion, particularly on our college campuses, of a supposed right not to be "given offense," in which students are to be protected from unwelcome and uncomfortable attitudes and points of view. These and other trends contribute to a legal environment in which IIED claims are flourishing. Many persons today take offense at many things, and it is reasonable that this Court should reflect upon the types of personal harms that should, and that should not, form the basis for future common-law lawsuits within our state.

Although I believe the IIED tort affords a sound legal protection in particular circumstances, see, e.g., *Haverbush v Powelson*, 217 Mich App 228 (1996) (concluding that there was a question of fact concerning whether the defendant's actions, which included a two-year period of intense stalking, threatening the plaintiff and his fiancée with violence, and leaving an ax and a hatchet on the fiancée's car, would constitute IIED), I do not believe we should maintain a tort that imposes civil liability on as wide a range of flawed, but commonplace, forms of human conduct as is suggested in the instant case. Accordingly, I would grant leave to appeal to assess both the parameters of the IIED tort and its present application. I see no reason why this case does not afford a good and proper vehicle by which to accomplish these ends.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 5, 2015



Clerk

a0602