*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CORLIS E. BROWN-LLOYD,

Plaintiff-Appellant,

v

HAMTRAMCK PUBLIC SCHOOLS, JALEELAH AHMED, NABIL NAGI, and MICHELLE IMBRUNONE,

Defendants-Appellees.

UNPUBLISHED
December 13, 2024
2:31 PM

No. 366400
Wayne Circuit Court
LC No. 21-016877-CD

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Plaintiff, Corlis E. Brown-Lloyd, brought employment discrimination claims against defendants, Hamtramck Public Schools (HPS), Jaleelah Ahmed, Nabil Nagi, and Michelle Imbrunone, alleging that she was denied a promotion as a result of race and/or age discrimination in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(10). Plaintiff now appeals as of right. We reverse.

## I. FACTUAL BACKGROUND

Plaintiff, who is African-American, was hired by HPS in 2019 as a Parent Engagement Facilitator (PEF). She was 61 years old at the time she was hired. In her role as PEF, plaintiff performed several of the duties of another position, the School and Community Facilitator (SCF)—at times voluntarily, and at times because she was assigned to perform those duties. Plaintiff also performed some of the SCF duties while the SCF was on maternity leave. Following her maternity leave, the SCF left HPS, creating a vacancy for the position.

It is undisputed that the SCF position would have been a promotion for plaintiff. She applied for the position in November 2020, but was not selected to interview. Instead, an interview panel, led by plaintiff's supervisor, Nagi, interviewed three other candidates, two of whom were African-American women. There is nothing in the record regarding those two women's ages or

-1-

qualifications. The third candidate interviewed was Elizabeth Alpert, who was Caucasian and younger than plaintiff. Alpert was ultimately hired for the SCF position.

The record contains conflicting evidence about how candidates were selected for interviews. During his deposition, Nagi testified that the human resources department (HR) prescreened the applications and selected the three candidates to be interviewed by the panel. He also testified that he did not know plaintiff applied for the SCF position until after that position had been filled because her application was never submitted to the panel. In a subsequent affidavit, however, Nagi averred that the interview panel was responsible for selecting candidates to interview for the position and that the panel did not select plaintiff because the other applicants were more qualified based on education and work experience. Nagi also averred in his affidavit that the panel had no knowledge of the candidates' races or ages when it selected them to interview. Ahmed, then-superintendent of HPS, averred in an affidavit that she assembled the interview panel to evaluate applications and to select individuals to interview, and that the panel was responsible for choosing the three candidates selected. Imbrunone, who was HR Director at the time, testified in her deposition that, after the job posting for the SCF position expired, "we ended up having a paper screening committee. We gathered our Interview Committee . . . to interview candidates."

After interviewing the three selected candidates, the panel unanimously recommended to Ahmed that she hire Alpert for the position. In his affidavit, Nagi averred that the panel recommended Alpert based on her past supervisory experience, her application of strong communication skills in her previous roles, and because she exhibited a positive, team-player attitude during the interview process. Nagi also averred that the panel determined that Alpert had counseling and criminal justice education and work experience that the panel believed were well suited to the needs of the position. Ahmed declined the option to interview Alpert for a second time, adopted the panel's recommendation, and hired Alpert. It is undisputed that plaintiff helped train Alpert for the SCF role after she was hired.

In June 2021, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that she was denied the SCF position because of race and age discrimination. In response, HPS filed a position statement with the EEOC explaining that the panel did not select plaintiff for an interview due to performance issues in her role as PEF. HPS claimed that plaintiff had demonstrated issues communicating and collaborating with others and that three parent liaisons who reported directly to plaintiff had resigned as a result of those issues. HPS represented that plaintiff had not shown that she could satisfactorily meet the requirements in her PEF position, and noted that plaintiff's supervisor in that position, Nagi, "had first-hand knowledge of her issues and deficiencies" and had been "a member of the panel" that did not select her for an interview.

Plaintiff filed a complaint in Wayne County Circuit Court in December 2021, asserting claims of race and age discrimination in violation of ELCRA. Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff's discrimination claims failed as a matter of law because she did not establish a prima facie case of race or age discrimination, nor could she establish that defendants' reasons for hiring Alpert were a pretext for discrimination. The trial court found that plaintiff failed to set forth a prima facie case of race or age discrimination because she did not set forth sufficient evidence to show that the SCF position was given to another

person under circumstances giving rise to an inference of unlawful discrimination. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Cantina Enterprises II Inc v Prop-Owners Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363105); slip op at 3. A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 5. On review, "this Court considers the parties' documentary evidence in the light most favorable to the party opposing the motion." *Cantina Enterprises*, ___ Mich App at ___; slip op at 3. Review is limited to the evidence presented to the trial court at the time the motion was decided. *Cleveland v Hath*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363321); slip op at 6.

## III. DISCUSSION

ELCRA prohibits employers from discriminating on the basis of race or age. MCL 37.2202(1)(a) states that an employer shall not do any of the following:

> Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Courts recognize "two broad categories of claims under this section: 'disparate treatment' and 'disparate impact' claims." *White v Dep't of Transp*, 334 Mich App 98, 107; 964 NW2d 88 (2020) (quotation marks and citation omitted). This case involves disparate treatment because plaintiff has alleged that defendants intentionally discriminated against her on the basis of race and age. See *id*.

Because plaintiff offers no direct evidence of impermissible bias, defendants' bid for summary disposition of her claims is analyzed under the *McDonnell Douglas*[1] burden-shifting framework. *White*, 334 Mich App at 107, citing *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001). As our Supreme Court has explained, this framework "merely provides a mechanism for assessing motions for summary disposition and directed verdict in cases involving circumstantial evidence of discrimination," and "is merely intended to progressively sharpen the inquiry into the elusive factual question of intentional discrimination." *Hazle*, 464 Mich at 466. "It is useful only for purposes of assisting trial courts in determining whether there is a jury-submissible issue on the ultimate fact question of unlawful discrimination." *Id*.

---

[1] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

Under the *McDonnell Douglas* framework, the plaintiff must first set forth a prima facie case of discrimination by presenting evidence that "(1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination."[2] *Id.* at 463. The plaintiff's burden at this opening stage "is not onerous." *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 253; 101 S Ct 1089; 67 L Ed 2d 207 (1981). The plaintiff is not required to produce enough evidence to allow the case to go to a jury; rather, she need only produce enough evidence to create a rebuttable presumption of discrimination. *Meagher v Wayne State Univ*, 222 Mich App 700, 710-711; 565 NW2d 401 (1997).

"[O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Hazle*, 464 Mich at 464. If the defendant establishes a legitimate, nondiscriminatory reason for the employment decision, the presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for discrimination. *White*, 334 Mich App at 108. "At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Id*. at 109 (cleaned up).

The trial court in this case determined that defendants were entitled to summary disposition because plaintiff's claims did not survive the opening, prima facie stage of the *McDonnell Douglas* framework. The trial court focused specifically on the fourth element of that prima facie showing: whether plaintiff set forth sufficient evidence that the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *White*, 334 Mich App at 108. As our Supreme Court has explained, a plaintiff is not required to establish this element in any one specific manner, but she must "present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Hazle*, 464 Mich at 470-471 (quotation marks and citation omitted).

The trial court erred by concluding that plaintiff did not carry her burden of producing sufficient evidence to set forth a prima facie case of discrimination. The parties do not dispute that plaintiff is a member of a protected class for purposes of both her race and age discrimination claims, and that she suffered an adverse employment action. And as to that adverse action, it is important to bear in mind that the decision not to hire plaintiff for the SCF position was made

---

[2] "[T]he elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand." *Hazle*, 464 Mich at 463 n 6. The parties all take the position that the elements set forth in *Hazle* are appropriate in this case, and this Court has utilized that articulation of the prima facie case in other cases involving allegations of race discrimination in which an internal candidate lost a sought-after promotion to an outside candidate. See *White*, 334 Mich App at 108 n 4. The same articulation has also been used in the context of age discrimination. See *DeBrow v Century 21 Great Lakes, Inc*, 463 Mich 534, 538 n 8; 620 NW2d 836 (2001).

when plaintiff's application did not advance past the initial stage of the hiring process, during which candidates were selected to interview from a pool of applicants. Accordingly, the decision pertinent to plaintiff's claims is not simply the decision to ultimately hire Alpert over the other two candidates selected to interview for the SCF position, but the preceding decision not to advance plaintiff to that interview stage of the hiring process.

As for the remainder of her prima facie case, plaintiff has produced sufficient evidence that she was at least minimally qualified for the SCF position at the time she applied[3] and that the decision not to interview her for the role occurred under circumstances giving rise to the inference of unlawful discrimination. *Id.* at 471-472. Defendants correctly note that plaintiff cannot establish that discriminatory inference "merely by showing that [s]he was qualified for the position and that a nonminority candidate was chosen instead." *Id.* at 470. But here, plaintiff offered more, pointing to evidence that she was the only candidate who had actual experience performing SCF job duties. It is undisputed that plaintiff performed SCF job duties while working in her role as PEF and while the previous SCF was on maternity leave, and that plaintiff helped train Alpert on how to perform SCF duties when Alpert was hired. In addition, plaintiff set forth evidence that she performed well in her role as PEF. It is undisputed that, at the time plaintiff applied for the SCF position, her personnel file contained no negative performance feedback and no disciplinary record. Plaintiff also points to an e-mail sent by Nagi in March 2020 praising her performance, and her performance evaluation from June 2020, which was positive. Accordingly, plaintiff has gone beyond showing that she was minimally qualified for the SCF role and that a younger, nonminority candidate was chosen instead; to the contrary, her offered evidence indicates that she was, in some ways, uniquely qualified for the position. *Id*. at 470-472.[4] These circumstances and

---

[3] On appeal, defendants do not dispute this point in any meaningfully developed way, but instead focus, like the trial court, on the fourth element of plaintiff's prima facie case. Correspondingly, defendants discuss plaintiff's qualifications largely in the context of how they compare to Alpert's, which does not in itself speak to whether plaintiff was minimally qualified. For example, defendants point to the fact that the SCF job description mentions a master's degree in education or a closely related field, and that Alpert had a master's degree in counseling whereas plaintiff had one in public administration. While by no means the model of clarity, the job description seems to provide that this was only a preferred qualification, and nothing in the record otherwise makes clear that plaintiff fell below the minimum qualifications for the SCF role by virtue of her educational credentials. Defendants also, at one point, note the comment in HPS's EEOC position statement that the interview panel "concluded that [plaintiff] did not meet the minimum qualifications for the SCF position" due to her performance issues in the PEF role. As discussed *infra*, however, there are significant questions of fact surrounding whether the panel made any such conclusion, and defendants did not subsequently rely on those claimed performance issues in explaining their decision not to interview plaintiff. Given that the focus at this prima facie stage is simply on the evidence produced by plaintiff, and given the arguments and record before us, we see no basis to conclude that plaintiff failed to produce sufficient evidence to establish this element of her prima facie case such that defendants would be entitled to summary disposition.

[4] On appeal, plaintiff also stresses that, in November 2023, she was hired as SCF by a new HR Director after Alpert left the position. This, however, occurred after the adjudication of the instant

supporting evidence were sufficient to make the necessary prima facie showing that the decision not to advance plaintiff's application past the initial screening, if left otherwise unexplained, was more likely than not based on the consideration of impermissible factors. *Id.*

In arguing that no inference of discrimination could arise from their decision not to interview plaintiff, defendants, like the trial court, rely on the fact that two African-American women were selected to interview for the SCF position.[5] It is undisputed that those candidates' races and ages were not known at the time they were selected to interview. Plaintiff, however, was an internal candidate. While, as discussed below, a question of fact exists as to whether the decision not to interview plaintiff was made by HR or the interview panel, it can be inferred—and defense counsel did not dispute at oral argument—that, either way, plaintiff's race and age would have been known to the decision maker by virtue of her employment with HPS. And ultimately, after the panel met and interviewed all three candidates, the nonminority candidate was selected over two African-American women for the position. Thus, the fact that the initial step of the hiring process was race- and age-blind to some extent does not eliminate the inference of unlawful discrimination in this case.

Defendants also, like the trial court, stress Alpert's own particular qualifications and that she was viewed by the interview panel to be the most qualified candidate for the job. This, however, skips past the point in the hiring process that proved decisive for plaintiff—the selection of candidates for interviews. The panel's apparent assessment of Alpert's qualifications relative to the other two interviewees' does not shed light on the circumstances surrounding the preceding interview-selection decision, particularly given the questions of fact regarding whether the panel was actually involved in that decision at all, as well as the dearth of evidence regarding the other two interviewees' qualifications and how they might have compared to plaintiff's. Furthermore, and more fundamentally, whether and to what extent defendants may have preferred Alpert's qualifications goes to the next stage of the *McDonnell Douglas* framework; the focus at this opening, prima facie stage is simply on whether "plaintiff presented evidence from which a jury, *if unaware of defendants' reasons*, could infer unlawful discrimination." *Id.* at 471 (emphasis added); see also *id.* at 472 (reserving consideration of the defendants' proffered reasons for deeming another candidate better qualified than the plaintiff for the second stage of the framework). This initial burden of production "is not onerous," *Burdine*, 450 US at 253, and its satisfaction "does not mean that the plaintiff produced sufficient evidence to allow the case to go to a jury," *Meagher*, 222 Mich App at 710-711. Plaintiff produced sufficient evidence to meet this initial, low burden of production, and the trial court erred by concluding otherwise.

Defendants maintain that, even if the court erred in this regard, application of the remainder of the *McDonnell Douglas* burden-shifting framework shows that the court's award of summary disposition in this case was correct. We disagree.

_____

motion for summary disposition and is not part of the record properly before us; accordingly, we will not consider it. See *Cleveland*, ___ Mich App at ___; slip op at 6.

[5] Defendants make no mention of the ages of these other two candidates.

Under the *McDonnell Douglas* framework, once a plaintiff establishes her prima facie case, an inference of discrimination arises. The burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its employment decision[.]" *White*, 334 Mich App at 108 (quotation marks and citation omitted). To meet this requirement, defendants rely on Nagi's affidavit in which he averred that the interview panel did not select plaintiff for an interview because "the other applicants were more qualified based on education and work experience."

In light of defendants' facially nondiscriminatory explanation, the burden then shifts back to plaintiff to show that the proffered rationale was merely a pretext for discrimination. See *id*. The plaintiff " 'may not be forced to pursue any particular means of demonstrating that respondent's stated reasons are pretextual.' " *Hazle*, 464 Mich at 469, quoting *Patterson v McLean Credit Union*, 491 US 164, 187-188; 109 S Ct 2363, 105 L Ed 2d 132 (1989).

Plaintiff argues that defendants offered changing rationales for not selecting her to interview for the SCF position, which supports a finding that their proffered nondiscriminatory reason is pretextual. The record bears this out. In its EEOC position statement, HPS took the position that plaintiff was not selected for an interview due to performance issues in her role as PEF. In their subsequent motion for summary disposition, however, defendants did not point to these issues as the reason plaintiff was not interviewed, nor were they mentioned in the supporting affidavits of Ahmed and Nagi; instead, the affidavits and motion maintained that plaintiff was not selected to interview because the other three applicants were all better qualified in terms of their education and work experience.[6] Defendants' shifting rationale supports a finding of pretext. See, e.g., *Thurman v Yellow Freight Sys, Inc*, 90 F3d 1160, 1167 (CA 6, 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."); *Parker v Dearborn Pub Sch*, unpublished opinion of the Court of Appeals, issued on October 1, 2019 (Docket No. 344897), p 4 (finding that the defendant's changing rationale for not hiring the plaintiff supported a finding of pretext).[7]

Furthermore, and even more problematically, defendants have been inconsistent regarding *who* made the decision not to interview plaintiff. In his affidavit, Nagi averred as to the reasons why the interview panel did not select plaintiff for an interview. But in his deposition, Nagi testified that HR, not the interview panel, made that decision. Indeed, he testified that he was not aware that plaintiff had even applied until after the position had been filled. Imbrunone's

---

[6] HPS's EEOC position statement, for its part, represented that Alpert was the most qualified of the three interview candidates; it did not, however, elaborate on the qualifications of the other two candidates or compare their education or work experience to plaintiff's. And, as mentioned previously, the record is otherwise devoid of any details regarding the qualifications of the two candidates that were interviewed but not hired for the SCF role.

[7] Although not binding on state courts, federal decisions can be highly persuasive, especially in employment discrimination cases. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004); *Northville Pub Sch v Mich Civil Rights Comm*, 118 Mich App 573, 576; 325 NW2d 497 (1982). Unpublished opinions are also not binding, MCR 7.215(C)(1), but may be persuasive, "especially when the unpublished case involves similar facts or when little published authority exists that is on point." *Miclea v Cherokee Ins Co*, 333 Mich App 661, 670; 963 NW2d 665 (2020).

deposition testimony likewise indicated that the interview panel was convened to conduct interviews of candidates, after a "paper screening committee" had reviewed applications. This inconsistency is particularly significant in light of defendants' reliance on Nagi's role both in the hiring process and as plaintiff's supervisor to legitimize the decision not to interview her. Given the inconsistencies and uncertainties in the record about why plaintiff was not selected for an interview and how that decision was made—including who was actually involved in and responsible for it—there are ample questions of fact in this case regarding whether defendants' proffered reasons for the decision were legitimate or impermissibly pretextual.

Defendants again stress that their decision could not have been discriminatory because two African-American women were selected for interviews and because Alpert was deemed to be so highly qualified for the SCF role. For the reasons already discussed, however, the mere selection of African-American interviewees does not show a lack of discriminatory animus in this case, nor does the interview panel's ultimate preference for Alpert over those candidates. Moreover, while a plaintiff does not necessarily have to prove that she was better qualified than the successful candidate for her discrimination claim to prevail, let alone survive summary disposition, see *Hazle*, 464 Mich at 469-470, plaintiff in this case, as discussed, has produced evidence that at least puts her and Alpert's relative qualifications in dispute. And none of defendants' arguments fully grapple with the inconsistencies and uncertainties discussed above regarding the basic "who," "why," and "how" of the decision-making process at issue, or meaningfully explain how defendants could be entitled to judgment as a matter of law despite them.

As our Supreme Court has explained, the final stage of the *McDonnell Douglas* framework mirrors the question the jury must ultimately decide at trial:

> The inquiry at this final stage of the *McDonnell Douglas* framework is exactly the same as the ultimate factual inquiry made by the jury: whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision. The only difference is that, for purposes of a motion for summary disposition or directed verdict, a plaintiff need only create a question of material fact upon which reasonable minds could differ regarding whether discrimination was a motivating factor in the employer's decision. [*Id.* at 466.]

"Where [there is] either direct or circumstantial evidence from which a fact-finder could rationally conclude that the employer's stated reason is a pretext for discrimination, summary judgment normally should be denied." *Town v Mich Bell Telephone Co*, 455 Mich 688, 698; 568 NW2d 64 (1997) (cleaned up). Here, viewed in the light most favorable to plaintiff, the evidence set forth by plaintiff to establish pretext, taken together with the evidence discussed above regarding plaintiff's prima facie case, is sufficient to create genuine issues of material fact as to whether race or age discrimination was a motivating factor in the decision not to interview, and thus not to hire, plaintiff for the SCF position. *Id.* The record in this case betrays, at minimum, "a jury-submissible issue on the ultimate fact question of unlawful discrimination," *Hazle*, 464 Mich at 466, and the trial court erred by failing to recognize as much and instead granting defendants judgment as a matter of law.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani