*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIELLE DOWTIN,

        Plaintiff-Appellee,

v

GRANDPAPA'S INC.,

        Defendant-Appellant.

UNPUBLISHED
August 22, 2025
8:47 AM

No. 368647
Wayne Circuit Court
LC No. 22-000745-CD

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

In this race discrimination action brought under the Elliott-Larsen Civil Rights Act ("the ELCRA"), MCL 37.2101 *et seq*., defendant appeals by leave granted[1] the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We reverse and remand.

## I. FACTUAL BACKGROUND

This appeal stems from plaintiff's complaint for disparate treatment based on race under MCL 37.2202 and retaliation for engaging in "protected activity" under MCL 37.2701 against defendant, Grandpapa's Inc. Defendant is a corporation operating a cheeseball manufacturing facility in Detroit, Michigan. Plaintiff, a Black woman, started working at defendant's facility in March 2019, and was terminated on October 7, 2019. At the start of her employment, plaintiff worked on the production line packaging cheeseballs during the afternoon shift. After a few months of employment, plaintiff was promoted to line leader for the afternoon shift.

In August 2019, defendant no longer had sufficient work to maintain two operational shifts and decided to terminate the afternoon shift. Many of the employees on the afternoon shift were laid off. Ralph Smith, the general manager of the factory, asked plaintiff to become a line leader

---

[1] *Dowtin v Grandpapa's Inc*, unpublished order of the Court of Appeals, entered February 21, 2024 (Docket No. 368647).

for the morning shift. Plaintiff accepted the offer and began working during the morning shift. Plaintiff did not have reliable transportation and was frequently late for the morning shift. Approximately one month after plaintiff's transfer to the morning shift, Smith and Natasha Halabu, defendant's director of human resources, decided to terminate plaintiff's employment. On October 7, 2019, Smith gave plaintiff a termination letter which stated her employment was being terminated because of a downturn in production. However, in deposition testimony, Smith explained that the reason plaintiff was terminated was because of her consistent tardiness.

In January 2022, plaintiff filed a complaint alleging claims of race discrimination and retaliation in violation of the ELCRA. According to plaintiff, during her tenure at the facility, there was a culture of racial tension between the Black and non-Black employees. Plaintiff alleged that one of her coworkers, Kamal Hermiz, would consistently demean her and question whether she was qualified to perform her job. Plaintiff also alleged that Hermiz's wife, Raida Hermiz, made a racist comment about plaintiff in plaintiff's presence.[2] Plaintiff immediately reported the comment to Smith and Halabu and she was terminated shortly thereafter. After the parties engaged in discovery and depositions, defendant moved for summary disposition arguing that plaintiff failed to establish prima facie cases with respect to her claims and that defendant articulated a legitimate, nondiscriminatory reason for its decision to terminate plaintiff. The trial court denied the motion. This appeal follows.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (emphasis omitted). When considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil*, 504 Mich at 160. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted). A trial court may not assess the credibility of witnesses or make factual findings on a motion for summary disposition. *White v Taylor Distrib Co, Inc*, 482 Mich 136, 142; 753 NW2d 591 (2008). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 120.

## III. RACE DISCRIMINATION

Defendant argues that the trial court erred in denying defendant's motion for summary disposition because plaintiff failed to support her race discrimination claim with sufficient evidence. We agree.

---

[2] Because the Hermiz's share a last name, we refer to them by their first names.

The ELCRA prohibits employers from discriminating on the basis of race. MCL 37.2202(1)(a). Former MCL 37.2202 provides, in relevant part:

> (1) An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202, as amended by 2023 PA 31.][3]

"The courts have recognized two broad categories of claims under this section: 'disparate treatment' and 'disparate impact' claims.' " *White v Dept of Transp*, 334 Mich App 98, 107; 964 NW2d 88 (2020) (quotation marks and citation omitted). "Disparate treatment requires a showing of either intentional discrimination against protected employees or against an individual plaintiff. Disparate impact requires a showing that an otherwise facially-neutral employment policy has a discriminatory effect on members of a protected class." *Duranceau v Alpena Power Co*, 250 Mich App 179, 182; 646 NW2d 872 (2002). This case concerns disparate treatment because plaintiff alleges that defendant intentionally discriminated against her on the basis of race. *Id.*

Discriminatory treatment in violation of the ELCRA may be established "by direct evidence or by indirect or circumstantial evidence." *Major v Newberry*, 316 Mich App 527, 540; 892 NW2d 402 (2016), quoting *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 132; 666 NW2d 186 (2003). Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions, and a plaintiff is required to present direct proof that the discriminatory animus was causally related to the adverse employment decision. *Sniecinski*, 469 Mich at 133, 135.

Because there is "no direct evidence of impermissible bias," plaintiff's claim is bound to proceed under the *McDonnell Douglas*[4] burden-shifting framework. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Pursuant to that framework, a plaintiff must set forth a rebuttable prima facie case by presenting evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she suffered the adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *Id.* at 463. There is no dispute that plaintiff belongs to a protected class, she suffered an adverse employment action when her employment was terminated, and she was qualified for the position. Therefore, only the fourth element of a prima facie case of racial discrimination is at issue, i.e., whether plaintiff's employment was terminated under circumstances that give rise to an inference of discrimination. *Id.* at 465-466.

---

[3] We rely on the version of the statute in effect at the time the contested order was issued. MCL 37.2202 has since been amended to specify protections for individuals on the basis of sexual orientation, gender identity, and gender expression which are inapplicable in the instant case.

[4] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

"While a plaintiff is not required to show circumstances giving rise to an inference of discrimination in any one specific manner, the plaintiff's burden of production remains to present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id*. at 470-471 (quotation marks and citation omitted). One way in which "[a] plaintiff can attempt to prove discrimination [is] by showing that the plaintiff was treated unequally to a similarly situated employee who did not have the protected characteristic." *Hecht v Nat'l Heritage Academies*, *Inc*, 499 Mich 586, 608; 886 NW2d 135 (2016). "In order for this type of 'similarly situated' evidence alone to give rise to such an inference, however, our cases have held that the 'comparable' employees must be 'nearly identical' to the plaintiff in all relevant respects." *Id*. (citation omitted).

Plaintiff asserted she proffered circumstantial evidence of defendant's racial discrimination because she was subjected to inappropriate commentary from Kamal and Raida. During her deposition, plaintiff testified Kamal frequently demeaned her ability to perform her job and would question her about why defendant needed plaintiff as an employee. She likewise testified that Kamal would assign her roles, such as sweeping or cleaning, that were outside the scope of her position and recommended that she accept the layoff. Although Kamal's conduct toward plaintiff, as alleged, was rude and inappropriate, plaintiff has not shown that his conduct stemmed from racial animus rather than personal distaste. Plaintiff conceded in her deposition testimony that Kamal had never made any statements about her race to her. More significantly, Kamal was not her supervisor and did not have authority to terminate her. Instead, he was a fellow employee who, according to former Grandpapa's employee Dawanda Chears, "acted like he was the boss." No record evidence supported that Kamal was responsible for making the decision to terminate plaintiff's employment, nor is there evidence that he influenced the opinions of the decision-makers, Smith and Halabu.

Plaintiff further testified that Raida made a disparaging racial comment about plaintiff in a discussion with her husband in front of plaintiff by calling her "a lazy Black girl."[5] Plainly, this disparaging comment that directly refers to plaintiff's protected characteristic was borne of racial animus. However, Raida was a fellow line employee. No record evidence supported that Raida participated in the decision to terminate plaintiff's employment, nor that Smith and Halabu shared this opinion.

Rather, the individual directly responsible for terminating plaintiff's employment was plaintiff's immediate, supervisor, Smith, who is a Black man. There is no allegation or evidence that Smith made improper comments or condoned the Hermiz's conduct. The record evidence reflects that Smith retained plaintiff as an employee even though the shift for which she was originally hired was being eliminated. Instead of discharging her, as was the case with most employees on that shift, plaintiff was transferred to the morning shift. Smith also attempted to accommodate plaintiff's scheduling needs but ultimately appeared to reach a point where plaintiff's continued tardiness became unmanageable. This evidence indicated that Smith

---

[5] While plaintiff initially stated in her complaint and in her original pleadings that it was Kamal who advanced the "lazy black girl" comment, plaintiff later retracted that statement, and she amended her pleadings to reflect that it was Raida who made the remark.

displayed a willingness to work with plaintiff as much as he could to continue her employment at the facility.

Plaintiff further presented evidence suggesting that there was some degree of animosity among staff at defendant's plant. Generally, the evidence indicates mutual disdain between Black and non-Black employees. However, plaintiff has not established that such animosity toward Black employees was held by management, and more specifically by Smith. Plaintiff further claimed that, after the termination of the second shift and the associated layoffs in August 2019, she returned to discover that non-Black employees who had been laid off were rehired, while Black employees were not. She contends that this evidence suggested defendant intended to eliminate its Black staff. However, plaintiff's testimony, along with that of others, suggest that there was no clear knowledge of who had actually been rehired at that time. Plaintiff and Chears appear to have drawn that conclusion only upon returning to the facility after the layoff and observing who was present. Plaintiff's retention along with other Black employees who were retained through the layoffs undermine plaintiff's theory.

Moreover, employment statistical records obtained during discovery showed that defendant has maintained a substantial percentage of Black employees even while significantly reducing its overall number of employees. In March 2019, defendant employed 88 facility workers, 62 of whom were Black. By October 2019, the workforce had declined to 35 employees, including 19 Black employees. As of plaintiff's termination date on October 7, 2019, only 31 employees remained, of whom 16 were Black. The statistical evidence did show a reduction in the total percentage of Black employees, but it would be speculative to infer that defendant intentionally targeted Black employees for layoffs from this evidence as opposed to the reduction being a product of the overall downsizing in workforce.

Additionally, plaintiff did not identify any similarly situated non-Black employees who were treated disparately from plaintiff. *Id*. at 607-608. There is no record evidence that other employees, let alone other line leaders, had issues with timely arrival for their shift and were not punished or terminated for their tardiness. To the contrary, Smith's deposition testimony indicated that he was sympathetic to plaintiff's issues with reliable transportation and tried to accommodate her, but ultimately terminated her because he could not show favoritism by excusing her tardiness when other employees were not extended the same consideration. Accordingly, plaintiff failed to demonstrate that she was treated unequally compared to a similarly situated employee who did not share her protected characteristics. In light of the circumstances, plaintiff is unable to establish a prima facie case of race discrimination.

Even assuming, arguendo, that plaintiff was able to establish a prima facie case of race discrimination, defendant remained entitled to summary disposition. The *McDonnell Douglas* burden-shifting framework provides, "[O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *White*, 334 Mich App at 93 (quotation marks and citation omitted; alteration in original). If the defendant provides a legitimate, nondiscriminatory reason for the employment decision, the presumption of discrimination is rebutted, "and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Sniecinski*, 469 Mich at 134. "At that point, in order to survive a motion for

summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.' " *Hazle*, 464 Mich at 465, quoting *Lytle v Malady (On Rehearing)*, 458 Mich 153, 176; 579 NW2d 906 (1998). "The strength of the prima facie case and the significance of the disbelieved pretext will vary from case to case depending on the circumstances. In short, everything depends on the individual facts." *Town v Mich Bell Tel Co*, 455 Mich 688, 697; 568 NW2d 64 (1997) (quotation marks and citation omitted).

Defendant provided two legitimate, nondiscriminatory reasons for plaintiff's termination. First, a production reduction eliminated her shift. Although plaintiff was retained and reassigned to the first shift, the overall need for employees remained reduced. This is supported by the employment statistics showing a significant decrease in the size of defendant's workforce. While the number of Black employees declined, this reduction appears to reflect the broader downsizing of the workforce rather than any discriminatory intent. Second, plaintiff consistently failed to arrive on time for her reassigned shift. Smith and Halabu testified that the decision to terminate plaintiff was on the basis of her consistent tardiness. As a line leader, it was imperative for her to arrive early to prepare for the shift, and her repeated failure to do so undermined her role, particularly given that she was on time for only 6 of 21 workdays. Smith and Halabu further testified that they had been willing to give plaintiff some leeway because they were sympathetic to her lack of transportation. However, they could not continue to permit plaintiff to arrive late to work every day. Smith additionally testified that he was aware of other employees who had been terminated for attendance issues, and, on the basis of this knowledge, he felt obligated to treat plaintiff consistently with how other employees had been treated.

Because defendant advanced legitimate, nondiscriminatory reasons for plaintiff's termination, plaintiff was required to present evidence that would permit a reasonable trier of fact to conclude that discrimination was a motivating factor in defendant's decision in order to survive the motion for summary disposition. *Hazle*, 463 Mich at 465. Plaintiff was required to not only demonstrate that defendant's proffered reasons were pretextual, but that they were a pretext for unlawful discrimination. *Id.* at 465-466. Our Supreme Court has explained:

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. [*Town*, 455 Mich at 704 (quotation and citation omitted; alteration in original).]

Regarding her tardiness, plaintiff alleges that Smith allowed her to arrive late for her shifts and Smith overlooked her late arrivals. But both Smith and Halabu testified that, although they were initially lenient regarding plaintiff's timeliness, the issue escalated to a point when they could no longer excuse it. This is supported by the fact that plaintiff arrived on time for fewer than 30% of her assigned morning shifts, as indicated by her timecards. Regarding the staff reduction, plaintiff did not offer any evidence to identify the Black employees who were laid off or discharged or establish any circumstances under which their employment was impermissibly terminated. Furthermore, while "[t]he use of statistics may be relevant in establishing a prima facie case of discrimination or in showing that the proffered reasons for a defendant's conduct are pretextual,"

-6-

in the instant case, "there is no separate evidence that race was a factor in the [employment] decision, and statistics would be plaintiff's only circumstantial evidence of discrimination." *White*, 334 Mich App at 112. Thus, plaintiff failed to present evidence that would permit a reasonable trier of fact to conclude that discrimination was a motivating factor in defendant's decision. Given these circumstances, the trial court erred by denying defendant's motion for summary disposition as to plaintiff's race discrimination claim.

## IV. RETALIATION

Defendant argues that the trial court erred in denying summary disposition of plaintiff's retaliation claim. We agree.

Under the ELCRA, "an employer is liable if it retaliates against an employee for having engaged in protected activity, e.g., opposing a violation of the act's antidiscrimination provision." *White*, 334 Mich app at 114. The ELCRA's antiretaliation provision provides:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701(a).]

To establish a prima facie case of retaliation, a plaintiff must establish (1) that she was engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 272-273; 696 NW2d 646 (2005). There is no dispute that plaintiff suffered an adverse employment action when she was terminated from her position; however, the remaining elements are in dispute.

Plaintiff claimed that defendant terminated her employment in retaliation for reporting a colleague's discriminatory remarks. Plaintiff testified that she disclosed the racist and derogatory comments made by Raida to Smith and Halabu. Plaintiff additionally testified that she informed Smith that Kamal had complained she was performing tasks that she should not have been permitted to perform. Although Smith and Halabu denied that plaintiff reported Raida's comment, plaintiff testified that she reported it to them immediately. This conflict in testimony raises a question of credibility that cannot be decided on a motion for summary disposition. See *White*, 482 Mich at 142. Viewing the evidence submitted by the parties in a light most favorable to the nonmoving party, we find that for purposes of a motion for summary disposition, plaintiff established a question of fact whether she engaged in a protected activity and whether defendant knew about it.

However, plaintiff fails to establish a causal connection between the protected activity and the adverse employment action. "The last element, causation, is usually difficult to prove." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 275; 826 NW2d 519 (2012). "Rarely will an employer openly admit having fired a worker in retaliation for exercising a right of employment." *Id*. at 276. Causation "can be established through circumstantial evidence, such as

close temporal proximity between the protected activity and adverse actions, as long as the evidence would enable a reasonable fact-finder to infer that an action had a discriminatory or retaliatory basis." *Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004).

While plaintiff contends that she demonstrated a causal connection because she reported the incident in September 2019 and she was discharged on October 7, 2019, plaintiff failed to present any other evidence of a nexus between her protected activity and her termination. See *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003) ("Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed"). Additionally, there was no indication that Kamal or Raida participated in the decision to terminate plaintiff's employment. Instead, defendants presented significant evidence showing that plaintiff lost her job because of her continued tardiness. For these reasons, the trial court erred by denying defendant's motion for summary disposition of plaintiff's retaliation claim.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi